650 A.2d 226

**UNITED PARCEL SERVICE, INC. et al. and Baltimore County, Maryland**

v.

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY, Maryland et al.**

**No. 140, Sept. Term, 1992.**

Court of Appeals of Maryland.

Dec. 6, 1994.

.

Henry R. Lord (Cynthia J. Morris, Piper & Marbury, Baltimore, on brief), Jack L.B. Gohn (Whiteford, Taylor &

Preston, Baltimore, H. Emslie Parks, County Atty., Michael J. Moran, Associate County Atty., Towson, on brief), for petitioner.

Peter M. Zimmerman, Deputy People's Counsel (Phyllis Cole Friedman, People's Counsel for Baltimore County, J. Carroll Holzer, Maher, Demilio & Lee, on brief), Towson, for respondent.

Judson P. Garrett, Jr., Anne Arundel County, Neal M. Janey and Burton H. Levin, Baltimore, Barbara M. Cook and Paul T. Johnson, Ellicott City, Joyce R. Stern and Karen Federman Henry, Rockville, Michael P. Whalen and J. Michael Dougherty, Jr., Upper Marlboro, J. Joseph Curran, Jr., Atty. Gen., Andrew H. Baida and Norman E. Parker, Jr., Asst. Attys. Gen., Baltimore, for amici curiae.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ.

ELDRIDGE, Judge.

This case involves procedural issues relating to the exercise of jurisdiction by a county board of appeals.

## I.

The controversy originated with United Parcel Service's, and its subsidiary Verbal Corporation's,[1] desire to establish a parcel distribution facility in the Loveton Industrial Park at 14402 York Road, in Baltimore County. The Loveton Industrial Park has been zoned Manufacturing Light (ML) since 1973. UPS had targeted Loveton Industrial Park as an

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Hereinafter United Parcel Service and Verbal Corporation will collectively be referred to as "UPS."

appropriate site for a distribution center as early as 1985, prior to acquiring the property.

In furtherance of its plans to acquire land and construct a facility at the Loveton site, UPS approached the Baltimore County Zoning Commissioner to obtain an informal determination whether its plans for the site conformed with the County's zoning laws. At a meeting on June 14, 1985, the Commissioner orally advised UPS that its proposed use at the Loveton site was permitted as of right under the applicable zoning classification. On July 8, 1985, UPS sent a letter to the Commissioner, seeking confirmation of his view. The letter was returned to UPS with the addition of a marginal note, dated July 10, 1985, in which the Commissioner wrote: "The aforementioned use of this property zoned ML is one that is permitted as of right & is OK." Subsequently, UPS purchased a 36–acre parcel within Loveton Industrial Park.

In order to construct a building in Baltimore County, one first must obtain a building permit from the Office of the Building Engineer, which is part of the Department of Permits and Licenses. Baltimore County Code (BCC) §§ 7–1, 7–36(a) (1988).[2] Upon the filing of an application for a building permit, the Building Engineer provides the Zoning Commissioner with a copy of the application for his approval before a permit may issue. Baltimore County Zoning Regulations § 500.1. The Commissioner determines whether the application is in proper form and whether the proposed use "complies in all respects with the regulations then in effect with respect to zoning." *Ibid.* If the Commissioner approves the application, and all other requirements are met, the Building Engineer may then issue a building permit. If the application is denied, the applicant may petition the County Board of Appeals for review of the denial. BCC § 7–36(a)(3, 4).

---

**2.** At the time when the events giving rise to this case were taking place, the 1978 version of the Baltimore County Code was in effect. As the applicable sections have merely been renumbered or inconsequentially reworded, we shall refer to the more recent, 1988, version of the Code.

On July 3, 1986, UPS applied to the Building Engineer for a building permit. Its application was approved by the Zoning Commissioner's office on August 18, 1986. After several other approvals were forthcoming, the Baltimore County Building Engineer issued the building permit on October 28, 1986.

After commencement of construction, Mr. Paul Hupfer, a local citizen, wrote a letter, dated January 11, 1987, to the Director of the Office of Planning and Zoning for Baltimore County. The letter referred to the construction of "a large warehouse style building in the Loveton Industrial Park which will be ... used ... by UPS," described what Mr. Hupfer believed would be the manner in which the building would be used, and asserted that the proposed use was not a permitted use. Mr. Hupfer stated that the facility fell within the category of "Trucking Terminal, Class I," which was permitted in the ML zone only by special exception. Mr. Hupfer pointed out that his search of the records disclosed no filing for a special exception for this facility. He "request[ed] that this letter be considered a formal recorded objection."

The Zoning Commissioner responded with a letter dated January 19, 1987. The Commissioner's letter stated in part as follows:

"The property in question is zoned ML, which permits warehousing as of right. After review of the UPS proposal, it was determined that the proposed use was and is in fact a warehouse, rather than a trucking facility as you suggest. Although obviously large trucks will be utilizing the facility, loading and unloading, the purpose of the site is to warehouse packages until such time as they are loaded for delivery.... I have determined that the use more closely resembles that of a warehouse than as a trucking facility.... [T]hus the building permit was issued.

\* \* \* \* \* \*

"In fact, your description of what would transpire at the site underscores the warehousing aspect of the proposed use. Transfer of the packages to other locations for final distribution is but one characteristic of a warehousing oper-

ation. I am more convinced than ever that the UPS is a warehouse operation and does not require a special exception."

Mr. Hupfer, joined by the Sparks–Glencoe Community Association, the Sparks–Quaker Bottom Community Association, and the Alexander Crossing Homeowners Association, Inc., in a letter to the Zoning Commissioner dated February 8, 1987, requested that the "letter decision dated January 19, 1987 . . . be set for an appeal hearing before the County Board of Appeals of Baltimore County." Specifically, he stated that the matter to be decided was whether the UPS building permit "should be revoked for failure of UPS to apply for a Special Exception.... The ... issue is my total disagreement with your interpretation that the facility being constructed by UPS is a warehouse."

UPS contested the Board of Appeals' authority to entertain an appeal, arguing that any appeal should have been taken within 30 days from the issuance of the building permit. On April 29, 1987, the Board held a hearing, and on May 20, 1987, it decided that it had the authority to entertain the appeal. The Board rejected the argument by Mr. Hupfer and the associations that the Zoning Commissioner's January 19, 1987, letter to Mr. Hupfer was an appealable decision; in the Board's view, the Zoning Commissioner in 1987 simply confirmed his earlier decision. Nevertheless, the Board held that Mr. Hupfer and the associations could appeal from the "decision by Commissioner Jablon [that] was made no later than July 10, 1985, when his written interpretation of the proposed use was communicated to UPS."

Moreover, without conducting an evidentiary hearing, the Board decided that the appeal from the 1985 "decision" was not subject to a timeliness objection, even though the Baltimore County Code required that appeals from decisions of the Zoning Commissioner be taken within 30 days. The Board reasoned that the "discovery rule," as applied to the running of the general statute of limitations in *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020 (1983), was applicable under the circumstances. The Board stated: "Al-

though the appeal to this Board from ... [the Zoning Commissioner's] decision was well beyond the thirty-day period ..., we still believe it to be timely. It is clear that the appellants herein first discovered Zoning Commissioner Jablon's determination upon receipt of his letter of January 19, 1987. Further, their efforts to ascertain the Commissioner's position were, in our view, diligent." Thus, the Board held that the 30–day period for an appeal did not begin to run until receipt of the January 19, 1987, letter, when Mr. Hupfer and the various associations "reasonably discovered" the harm. The appeal to the Board was deemed to be timely because it was instituted within 30 days of January 19th.

UPS, joined by Baltimore County, then sought judicial review of this determination in the Circuit Court for Baltimore County. The circuit court dismissed the action, agreeing with Mr. Hupfer, the associations, and the People's Counsel for Baltimore County, that the Board's interlocutory decision was not immediately reviewable.[3] The Court of Special Appeals, in an unreported opinion, affirmed, and this Court denied a petition for a writ of certiorari, *Verbal Corp. v. Hupfer*, 313 Md. 31, 542 A.2d 858 (1988).

The merits of the case were then heard by the Board of Appeals. In a 2–1 decision, the Board held that the use determination was properly made and that no special exception was necessary. It alternatively held that UPS's use of the property was permitted under the "equitable doctrine of estoppel."

The protestants then brought in the Circuit Court for Baltimore County an action for judicial review. They challenged the Board's rulings on the merits; they also argued that the Zoning Commissioner's January 19, 1987, letter was an appealable decision and furnished the basis for the Board's authority to decide the case. In addition, UPS filed an action for judicial review, seeking review of the Board's decision that

---

3.  Hereinafter Mr. Hupfer, the various community associations, and the People's Counsel for Baltimore County, will sometimes be referred to collectively as "the protestants."

it had authority to entertain the appeal. The circuit court rejected UPS's contention that the Board of Appeals lacked authority to entertain the appeal. Moreover, the circuit court reversed the Board's decision on the merits, holding that the proposed facility was, as a matter of law, a trucking terminal. The court also held that the doctrine of equitable estoppel could not be applied to save "an illegal use." The circuit court remanded the case to the Board of Appeals for a determination of whether a special exception was warranted.

UPS and Baltimore County appealed, and the Court of Special Appeals affirmed in a 2–1 decision, *United Parcel v. People's Counsel*, 93 Md.App. 59, 611 A.2d 993 (1992). The intermediate appellate court held that (1) the circuit court was correct in reversing the Board of Appeals' decision on the merits, (2) the doctrine of equitable estoppel was not available to save an illegally issued building permit, (3) the January 19, 1987, letter by the Zoning Commissioner to Mr. Hupfer was a "decision" within the meaning of § 26–132 of the Baltimore County Code, and therefore appealable to the Board of Appeals, and (4) the "appeal" taken to the Board of Appeals was within the 30–day time period.

UPS and Baltimore County filed in this Court petitions for a writ of certiorari which we granted, 329 Md. 338, 619 A.2d 547 (1993). We shall hold that the Board of Appeals, the circuit court and the Court of Special Appeals erred as a matter of law when they held that the Board of Appeals had authority to entertain an appeal from the Zoning Commissioner's 1985 margin note to UPS or from his January 19, 1987, letter to Mr. Hupfer. Therefore, we do not reach, and the tribunals below should not have reached, the issues relating to permitted use and estoppel.[4]

## II.

■ Judicial review of administrative agency action is narrow. The court's task on review is *not* to " 'substitute its

---

**4.** In connection with the estoppel issue, *see Permanent Fin. Corp. v. Montgomery Cty.*, 308 Md. 239, 518 A.2d 123 (1986).

judgment for the expertise of those persons who constitute the administrative agency,'" *Bulluck v. Pelham Woods Apts.*, 283 Md. 505, 513, 390 A.2d 1119, 1124 (1978), quoting *Bernstein v. Real Estate Comm.*, 221 Md. 221, 230, 156 A.2d 657, 662 (1959), *appeal dismissed,* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960). A reviewing "Court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency." *United Steelworkers v. Beth. Steel,* 298 Md. 665, 679, 472 A.2d 62, 69 (1984). A court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law. *See, e.g., Younkers v. Prince George's County,* 333 Md. 14, 18–19, 633 A.2d 861, 863 (1993); *Maryland State Police v. Lindsey,* 318 Md. 325, 334, 568 A.2d 29, 33 (1990); *People's Counsel v. Maryland Marine,* 316 Md. 491, 496–497, 560 A.2d 32, 34–35 (1989); *State Election Bd. v. Billhimer,* 314 Md. 46, 58, 548 A.2d 819, 826 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989); *Balto. Lutheran High Sch. v. Emp. Sec. Adm.,* 302 Md. 649, 661–662, 490 A.2d 701, 708 (1985) ("ordinarily, the court reviewing a final decision of an administrative agency shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision").

Throughout this case two grounds have been advanced in support of the protestants' contention that the Board of Appeals had the authority to entertain this case on the merits. First, the Board of Appeals specifically held that, under the "discovery rule," an appeal in 1987 could be taken from the Zoning Commissioner's "decision" of July 10, 1985. Alternatively, the protestants have argued that the January 19, 1987, letter by the Commissioner to Mr. Hupfer was a final decision by the Zoning Commissioner subject to appeal. The Board of Appeals ruled upon both theories, and, as previously stated, held that it could exercise jurisdiction under the first theory. The Court of Special Appeals upheld the Board's exercise of jurisdiction based on the second of these theories. We hold

that, as a matter of law, neither event could serve as the basis for the Board's authority to entertain the case.

### A.

■ The Baltimore County statute authorizing appeals to the Board of Appeals from decisions of the Zoning Commissioner, BCC § 26–132(a), states that "[n]otice of such appeals shall be filed ... within thirty (30) days from the date of any final order appealed...." The Board of Appeals concluded that an appeal could be maintained from the Zoning Commissioner's marginal note dated July 10, 1985, although more than a year had passed since then. It premised its holding on the "discovery rule." The Board stated that the Zoning Commissioner's use determination for the UPS facility occurred during the exchanges between the Commissioner and UPS in 1985. Furthermore, the Board, without holding an evidentiary hearing, "found" that Mr. Hupfer was unaware of the Zoning Commissioner's 1985 use determination until receipt of the Commissioner's letter dated January 19, 1987. Therefore, according to the Board, the 30–day appeal period did not begin to run until Mr. Hupfer's receipt of the January 19, 1987, letter, when Mr. Hupfer could reasonably have been expected to know of the Zoning Commissioner's determination.

The so-called "discovery rule" is a principle of statutory construction and application, which is employed to determine when a cause of action has "accrued" within the meaning of that term in a statute of limitations. *See, e.g., Hecht v. Resolution Trust,* 333 Md. 324, 635 A.2d 394 (1994); *Pierce v. Johns–Manville Sales Corp., supra,* 296 Md. 656, 464 A.2d 1020; *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981). Those cases specifically involved the general statute of limitations set forth in Maryland Code (1974, 1989 Repl. Vol., 1994 Cum.Supp.), § 5–101 of the Courts and Judicial Proceedings Article, which provides (emphasis added):

"A civil action at law shall be filed within three years from the date it *accrues* unless another provision of the Code

provides a different period of time within which an action shall be commenced."

No definition of the word "accrues" is provided in the statute. "Because the term 'accrue' is undefined by the legislature, the question of accrual is left to judicial determination." *Hecht v. Resolution Trust, supra,* 333 Md. at 333, 635 A.2d at 399. *See Pierce v. Johns–Manville Sales Corp., supra,* 296 Md. at 664, 464 A.2d at 1025. We have held that, generally, a cause of action "accrues" within the meaning of § 5–101 when "the plaintiff knows or should know of the injury, its probable cause, and ... [the defendant's] wrongdoing...." *Hecht,* 333 Md. at 336, 635 A.2d at 400.

As previously indicated, the Baltimore County statute authorizing appeals to the Board of Appeals, § 26–132 of the Baltimore County Code, states as follows:

"(a) Any person or persons, jointly or severally, or any taxpayer aggrieved or feeling aggrieved by any decision or order of the zoning commissioner or the director of zoning administration and development management shall have the right to appeal therefrom to the county board of appeals.

\*     \*     \*     \*     \*     \*

"Notice of such appeals shall be filed, in writing, with the director within thirty (30) days from date of any final order appealed, together with the required fee as provided in the zoning regulations."

The above-quoted section is not a statute of limitations. Instead, it is a "time for appeal" provision like that set forth in Maryland Rule 8–202(a) ("the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken"). Section 26–132 of the Baltimore County Code, like Rule 8–202(a), specifies the time for appealing from a decision by an official or tribunal exercising original jurisdiction to an appellate tribunal within the same governmental framework. A statute of limitations, on the other

hand, typically concerns the time for filing an original cause of action, complaint or request.

Like other "time for appeal" provisions, BCC § 26–132 neither contains the word "accrues" nor speaks in terms of accrual. Moreover, there is no language in § 26–132 which could furnish the basis for a flexible doctrine like the discovery rule. Rather, the time for appeal begins to run from a fixed date. In mandatory language, the Baltimore County statute states that a notice of appeal "shall" be filed within thirty days of the decision from which the appeal is taken. Under language like that set forth in BCC § 26–132, this Court has consistently held that, where the notice of appeal was not filed within the prescribed period after the final decision from which the appeal was taken, the appellate tribunal had no authority to decide the case on its merits. *See, e.g., Dabrowski v. Dondalski,* 320 Md. 392, 397–398, 578 A.2d 211, 214–215 (1990); *Walbert v. Walbert,* 310 Md. 657, 662, 531 A.2d 291, 293 (1987), and cases there cited.

A case very much on point is *Miller v. Pinto,* 305 Md. 396, 504 A.2d 1140 (1986). In *Miller,* Mr. and Mrs. Pinto received approval from the Kent County Zoning Administrator for their intended use of their property. The Zoning Administrator, in a letter dated August 20, 1982, gave his express approval of the intended use. In April of 1983, an adjacent property owner, Mr. Miller, took an appeal to the Board of Appeals from the Zoning Administrator's letter of August 1982. Like BCC § 26–132, the Kent County zoning ordinance required that an appeal from the final decision of the Zoning Administrator be taken within 30 days. This Court held that the Kent County Board of Appeals had no appellate jurisdiction over the case, as "the 30–day period had expired long before Miller filed an application for review of the Zoning Administrator's August 1982 letter...." 305 Md. at 405, 504 A.2d at 1144.

Consequently, the Board of Appeals erred in holding that, under the "discovery rule," the protestants' appeal could be

treated as a timely appeal from the 1985 advice and marginal note from the Zoning Commissioner.[5]

## B.

██ The protestants' principal argument, both at the administrative level and before the courts, has been that the January 19, 1987, letter from the Zoning Commissioner to Mr. Hupfer constituted an appealable event. If the January 19th letter was appealable, then the appeal taken on February 8, 1987, was timely, and the Board was authorized to decide the merits of the case. The protestants rely on language in the Express Powers Act, Maryland Code (1957, 1994 Repl. Vol.), Art. 25A, § 5(U), on the Baltimore County Charter, and on BCC § 26–132(a).

Baltimore County is a charter county pursuant to Article XI–A of the Maryland Constitution. Article 25A, § 5, of the Maryland Code enumerates the express powers which are granted to and conferred upon any county which adopts a charter under Article XI–A of the Constitution. Section 5(U) of Article 25A provides the authority for a charter county

"[t]o enact local laws providing (1) for the establishment of a county board of appeals . . . and (4) for the decision by the

---

5. Even if the Baltimore County statutory provisions had contained language authorizing a "discovery rule" approach to the appellate jurisdiction of the Board of Appeals, the Board's decision that it was authorized to exercise appellate jurisdiction from the 1985 "decision" would likely have been erroneous on two other grounds.

First, the Board declined to hold an evidentiary hearing on the issue of its authority to entertain the appeal. Its "finding" that Mr. Hupfer was unaware of the Zoning Commissioner's ruling until January 1987 is unsupported by substantial evidence.

Second, the Board's conclusion that the July 10, 1985, marginal note by the Zoning Commissioner was an appealable "decision" within the meaning of BCC § 26–132(a) seems doubtful. No legal rights or duties of anyone were changed in any way by the Zoning Commissioner's informal advice in 1985. As far as the record shows, no applications concerning this property were pending before any governmental body. In fact, UPS had not yet acquired the property. The first governmental "decision" or "approval" in this case would appear to have been the 1986 approvals of the UPS application for a building permit, culminating in the issuance of a building permit on October 28, 1986, by the Building Engineer. No timely appeals were taken from this action.

board on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or ·exception ...; *the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, ... or other form of permission* or of any adjudicatory order...." (Emphasis added).

The appellate jurisdiction of a board of appeals set forth in Art. 25A, § 5(U), is incorporated by reference into § 602(d) of the Baltimore County Charter, which provides as follows:

*"Appeals from executive, administrative and adjudicatory orders.* The county board of appeals shall hear and decide appeals from all other administrative and adjudicatory orders as may from time to time be provided by Article 25A of the Annotated Code of Maryland (1957 Edition), as amended, or by legislative act of the county council not inconsistent therewith."

The protestants have consistently argued, and the Court of Special Appeals agreed, that the January 19, 1987, letter "constitutes an 'action of an administrative officer' relating to an 'approval ... or other form of permission' under Art. 25A, § 5(U)." *See* 93 Md.App. at 83, 611 A.2d at 1005. The protestants also argue that the January 19, 1987, letter embodied a "decision" of the Zoning Commissioner which was appealable under BCC § 26–132(a).

We agree with the Board of Appeals, and with Judge Cathell's dissenting opinion in the Court of Special Appeals, that the Zoning Commissioner's January 19, 1987, letter simply confirmed or reaffirmed his prior "approval" or "decision" that UPS's use was a permitted one. *See* 93 Md.App. at 84, 611 A.2d at 1005 (Cathell, J., dissenting) ("It is absolutely

clear to me that the Zoning Administrator merely reaffirmed his original decision"). The "approval" or "other form of permission" in this case, and the "decision" of the Baltimore County officials, occurred in 1986 when the Zoning Commissioner and other officials approved UPS's application for a building permit and the Building Engineer issued a building permit.

In fact, Mr. Hupfer and the associations in their letter of February 8, 1987, seemed to recognize that the "approval" and "decision" in this case was the 1986 approval of the application for and the issuance of the building permit, because the only relief sought from the Board of Appeals was the revocation of the building permit. With respect to such administrative relief, the Zoning Commissioner's January 19, 1987, letter could not have been an "approval" or "decision." Under the Baltimore County statutory scheme, once the Zoning Commissioner approves the application for a building permit and the Building Engineer issues the permit, the Zoning Commissioner does not have any further authority over that permit. The Building Engineer is the only official authorized to issue building permits, BCC § 7–36(a), and the authority to supervise activity pursuant to a building permit is vested in the Building Engineer, BCC § 7–2(a), and the Department of Permits and Licenses, § 529 of the Baltimore County Charter. More specifically, only the Building Engineer is granted authority to "revoke, suspend, annul, or modify any [building] permit," BCC § 7–36(a)(3). An appeal to the Board of Appeals "for review of the action of the Building Engineer" may be taken "[w]ithin thirty (30) days and not longer," BCC § 7–36(a)(4).

The clause from Art. 25A, § 5(U), relied upon by the protestants and the Court of Special Appeals, grants to a board of appeals appellate jurisdiction from "the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval … or other form of permission. . . ." The words "issuance, renewal, denial, revocation, suspension, annulment, or modification" obviously refer to an operative event which determines whether the applicant

will have a license or permit, and the conditions or scope of that license or permit. The plain import of the words would not include a statement simply confirming that a license or permit was issued or denied in the past or defending a past issuance or denial of a license or permit. In the context, the phrase "approval ... or other form of permission," on which the protestants place so much reliance, seems to have been designed simply to encompass all forms of licensing regardless of what the particular license or permit may be called.[6] Nevertheless, the appealable event is the issuance, renewal, revocation, etc. of the license or permit. In the present case, this appealable event occurred in 1986 when the application for a building permit was approved and the permit was issued.

If Art. 25A, § 5(U), were construed to grant an appeal to a board of appeals from an administrative official's reaffirmation or statement that a license or permit had been properly issued or properly denied in the past, an applicant or a protestant could circumvent entirely the statutory time limits for taking appeals. In *Nat'l Inst. Health Fed. Cr. Un. v. Hawk*, 47 Md.App. 189, 195, 422 A.2d 55, 58–59 (1980), *cert. denied*, 289 Md. 738 (1981), the Court of Special Appeals, quoting the hearing examiner, explained:

> " 'The "decision" which is the subject of [the] Appeals ... is not a final administrative decision, order or determination. It is at most a reiteration or reaffirmation of the final administrative decision or order of the department granting the original Use and Occupancy Certificate.... If this were not the case an inequitable, if not chaotic, condition would exist. All that an appellant would be required to do to preserve a continuing right of appeal would be to maintain a continuing stream of correspondence, dialogue, and requests ... with appropriate departmental authorities even

---

**6.** *Compare* the Maryland Administrative Procedure Act, Maryland Code (1993, 1994 Cum.Supp.), § 10–202(f) of the State Government Article, which defines "license" broadly as a license "in any form, including: (i) an approval...."

on the most minute issues of contention with the ability to pursue a myriad of appeals ad infinitum.' "

The Zoning Commissioner, in responding to Mr. Hupfer on January 19, 1987, did not grant, deny, decide, or order anything. The Commissioner's letter simply explained and defended the 1986 decision approving the application for a building permit. Consequently, the January 19, 1987, letter was not an "approval" or "decision" appealable to the Board of Appeals.

### III.

In this Court, the protestants alternatively argue that the Board of Appeals' decision to reach the merits of the case can be upheld as an exercise of original jurisdiction. This argument must fail for either of two reasons. First, the Board did not purport to exercise original jurisdiction and did not rule on the issue of whether it had original jurisdiction. Second, it is clear to us that the Baltimore County Board of Appeals had no original jurisdiction in the matter.

### A.

It is true that when an appellate court reviews the judgment of a trial court on direct appeal, the appellate court ordinarily will affirm the judgment on any ground adequately shown by the record even though the trial court may not have ruled upon such ground. This principle, however, is not applicable to judicial review of administrative agency decisions. As indicated earlier in this opinion, judicial review of an agency's decision is normally limited to the findings of fact and conclusions of law actually made by the agency.

This distinction between review of a trial court's decision and review of an agency's decision was explained by Judge Rodowsky for the Court in *United Steelworkers v. Beth. Steel*, *supra*, 298 Md. at 679, 472 A.2d at 69:

"Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evi-

dence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency. *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167–68, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207, 215–16 (1962); *Securities and Exchange Comm'n v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626, 636–37 (1943); *Harborlite Corp. v. I.C.C.,* 613 F.2d 1088, 1092–93 (D.C.Cir.1979): *International Paper Co. v. Federal Power Comm'n,* 476 F.2d 121, 128 (5th Cir.1973); *USV Pharmaceutical Corp. v. Secretary of Health, Education & Welfare,* 466 F.2d 455, 461–62 (D.C.Cir.1972); *Marco Sales Co. v. F.T.C.,* 453 F.2d 1, 7 (2d Cir.1971); *Davis v. Weinberger,* 390 F.Supp. 813, 816 (M.D.Pa.1975); *Blodgett Uncrated Furniture Service, Inc. v. United States,* 288 F.Supp. 591, 598–99 (W.D.Mich.1968); *Bell Lines, Inc. v. United States,* 263 F.Supp. 40, 44–46 (S.D.W.Va.1967); 3 Davis, *Administrative Law Treatise* § 14:29 (2d ed. 1980). 'The courts may not accept appellate counsel's *post hoc* rationalizations for agency action....' *Burlington Truck Lines, Inc., supra,* 371 U.S. at 168, 83 S.Ct. at 246, 9 L.Ed.2d at 216."

*See Mossburg v. Montgomery County,* 329 Md. 494, 507–508, 620 A.2d 886, 893 (1993); *Harford County v. Preston,* 322 Md. 493, 505, 588 A.2d 772, 778 (1991); *Motor Vehicle Admin. v. Mohler,* 318 Md. 219, 231, 567 A.2d 929, 935 (1990); *Baltimore Heritage v. City of Baltimore,* 316 Md. 109, 113, 557 A.2d 256, 258 (1989).

Turning to the present case, Mr. Hupfer's letter of February 8, 1987, invoked only the appellate jurisdiction of the Board of Appeals. Furthermore, the Board of Appeals treated the case as an appeal and specifically ruled upon two arguable grounds for exercising appellate jurisdiction. The Board neither ruled upon nor mentioned the possibility that it might have original jurisdiction in the matter. Thus, the

Board's decision to exercise jurisdiction cannot be sustained on any theory of original jurisdiction. To reiterate, we " 'may not accept appellate counsel's *post hoc* rationalizations' " for the Board's decision, *United Steelworkers v. Beth. Steel, supra,* 298 Md. at 679, 472 A.2d at 69, quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207, 216 (1962).

## B.

Moreover, if the original jurisdiction theory had been submitted to and decided by the Board of Appeals, the result would not be different. The Board had no original jurisdiction in the present case.

The Baltimore County Charter, in § 602(e), grants to the Board of Appeals "original and exclusive jurisdiction over all petitions for reclassification." This is the only original jurisdiction granted to the Board of Appeals by the Charter or laws of Baltimore County. Except for reclassifications, the Board's jurisdiction is exclusively appellate. Section 602(a) of the Charter authorizes "[a]ppeals from orders relating to zoning." Under § 602(b), the Board is given appellate jurisdiction "from orders relating to licenses." "Appeals from orders relating to building" are authorized by § 602(c) of the Charter, and "appeals from all other administrative and adjudicatory orders" are authorized by § 602(d). The protestants have not pointed to any provision in the Charter or laws of Baltimore County which would have given the Board of Appeals original jurisdiction in this case.

The basis for the protestants' argument that the Board of Appeals had original jurisdiction is the Express Powers Act, Maryland Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(U). As previously pointed out, § 5(U) authorizes a charter county

"[t]o enact local laws providing (1) for the establishment of a county board of appeals . . .; and (4) for the decision by the board . . . of such of the following matters arising (*either originally or on review of the action of an administrative officer or agency* ) under any law, ordinance, or regulation of

... the county council ...: An application for a zoning ... exception ...; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval...." (Emphasis added).

Relying upon the above-quoted reference to original jurisdiction in § 5(U), and relying upon this Court's opinion in *Hope v. Baltimore County*, 288 Md. 656, 421 A.2d 576 (1980), the protestants contend "that any county with a [board of appeals] takes it with all the powers enumerated in the Express Powers Act, including original jurisdiction." (Brief of Appellees at 41). The protestants argue that, if a charter county establishes a board of appeals, § 5(U) and *Hope v. Baltimore County, supra*, require that such board of appeals have original jurisdiction over all of the matters delineated in § 5(U), including all zoning matters, all licensing, etc. The protestants maintain that, to the extent that a county's charter or ordinances limit the board of appeals to appellate jurisdiction over any matters set forth in § 5(U), such charter provisions or ordinances are invalid.

The plain language of § 5(U) contradicts the protestants' argument. A charter county is authorized to enact laws providing for decisions by the board of appeals "either originally or on review of the action of an administrative officer or agency." A charter county is thus given the option, as to any particular matter encompassed by § 5(U), to vest the board of appeals with original jurisdiction or with appellate jurisdiction. Baltimore County has decided to give its Board of Appeals original jurisdiction in only one category of cases, namely reclassifications. In all other matters, Baltimore County has decided to vest only appellate jurisdiction in the Board of Appeals. This is consistent with the language and design of § 5(U). It must be kept in mind that the General Assembly in § 5(U) was legislating with regard to a "board of *appeals*" and not a trial board. *Cf. Shell Oil Co. v. Supervisor*, 276 Md. 36, 41, 343 A.2d 521, 524 (1975) ("appellate jurisdiction only ... is inherent in the concept of the 'Court of Appeals'"). While the General Assembly did authorize a charter county, at its option, to vest original jurisdiction in a board of appeals

with respect to any particular matter, it was obviously contemplated by the language of § 5(U) that a board of appeals would predominantly be an appellate tribunal.

This Court's opinion in *Hope v. Baltimore County, supra,* furnishes no support for the protestants' original jurisdiction argument. The *Hope* opinion was concerned with and discussed only the appellate jurisdiction of the Baltimore County Board of Appeals. At the time of *Hope,* a section of the Baltimore County Code provided for direct judicial review in the Circuit Court for Baltimore County of a decision by the Planning Board approving or disapproving a subdivision plat. In other words, the Baltimore County Code provided for bypassing the Board of Appeals with respect to one type of adjudicatory order. This Court held that, in light of § 5(U) of the Express Powers Act, and §§ 601 and 602 of the Baltimore County Charter which created a board of appeals and vested in it all of the subject matter jurisdiction set forth in § 5(U), a Baltimore County local law could not validly authorize a party to bypass the Board of Appeals. We held that an interested party objecting to a Planning Board decision on a subdivision plat would be required to appeal to the Board of Appeals and could obtain judicial review only after a final decision by the Board of Appeals. Although *Hope* held that the Baltimore County Board of Appeals had all of the subject matter jurisdiction set forth in § 5(U), nothing in the *Hope* opinion intimated that the Board was required to have both original and appellate jurisdiction with respect to the various matters encompassed by § 5(U).

The protestants also rely upon *People's Counsel v. Crown Development,* 328 Md. 303, 316, 614 A.2d 553, 559 (1992), where this Court held, *inter alia,* that on an appeal from the decision of administrative officials granting final approval of a development plan, the Baltimore County Board of Appeals was authorized under the Express Powers Act and local law to receive and consider evidence in addition to that contained in the record before the administrative officials. The *Crown Development* case, like the *Hope* case, was concerned only with the appellate jurisdiction of the Board of Appeals. Our

holding with regard to additional or *de novo* evidence before the Board of Appeals does not support the view that the Board has original jurisdiction over all subjects delineated in § 5(U). The fact that an appellate tribunal may be authorized to receive additional evidence or hear a case *de novo* does not mean that it is exercising original jurisdiction. A *de novo* appeal is nevertheless an exercise of appellate jurisdiction rather than original jurisdiction. *See Hardy v. State,* 279 Md. 489, 492, 369 A.2d 1043, 1046 (1977). Whether a tribunal's exercise of jurisdiction is appellate or original does not depend on whether the tribunal is authorized to receive additional evidence. Instead, as Chief Justice Marshall explained, "[i]t is the essential criterion of appellate jurisdiction that it revises and corrects the proceedings in a cause already instituted, and does not create that cause...." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 175, 2 L.Ed. 60, 73 (1803). *See Shell Oil Co. v. Supervisor, supra,* 276 Md. at 42, 343 A.2d at 525.

Finally, the protestants rely upon *Miller v. Pinto, supra,* 305 Md. 396, 504 A.2d 1140, in which the Court held that the Board of Appeals of Kent County had original jurisdiction to determine whether a particular use of property violated the local zoning ordinance. In *Miller,* however, the local zoning ordinance expressly granted such original jurisdiction to the Kent County Board of Appeals. *See* 305 Md. at 405–406, 504 A.2d at 1145. Baltimore County has no ordinance vesting similar original jurisdiction in the Baltimore County Board of Appeals.

The construction of the Express Powers Act advocated by the protestants would create chaos in charter counties. If a county board of appeals were required by state law to exercise original jurisdiction in all of the matters delineated in § 5(U), the board would likely become the chief operating agency in the county. Any applicant for any type of zoning decision, permit, license, governmental approval, etc., could initially go to the board of appeals and require the board to act. The board would be taking the place of numerous county departments and agencies. County boards of appeals in Maryland are not and never have been structured to perform such a

function. Under the Express Powers Act, a board of appeals is primarily an appellate tribunal, having only such original jurisdiction as a county's charter and ordinances expressly grant to the board.

In deciding that it had authority to entertain the appeal in this case, the Baltimore County Board of Appeals erred as a matter of law. It should have dismissed the appeal.[7]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH DIRECTIONS TO VACATE THE DECISION OF THE BOARD OF APPEALS AND REMAND THE CASE TO THE BOARD OF APPEALS WITH DIRECTIONS TO DISMISS THE ADMINISTRA-TIVE APPEAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*

---

7. Our decision does not leave the protestants without a remedy. Section 26–120(a) of the Baltimore County Code provides as follows:

"[A]ny person whose property is affected by any violation [of zoning regulations], ... whether specially damaged or not, may maintain an action in any appropriate court for an injunction enjoining the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, and land in violation of zoning regulations and restrictions adopted pursuant to this title and requiring the return of property, to the extent possible, to its condition prior to the violation, including removal of the source of the violation."

In an equity action under this section, consideration can be given to equitable defenses such as laches. An action under § 26–120(a), involving the UPS facility, is presently pending in the Circuit Court for Baltimore County.