7 A.3d 710

John ANSELMO, et al.

v.

MAYOR City Council of Rockville, et al.

No. 1006, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Nov. 1, 2010.

James L. Parsons, Jr., (Lynott, Lynott & Parsons PA, on the brief), Rockville, for appellant.

Debra Y. Daniel, Rockville & William Kominers, Bethesda (Cynthia B. Walters City, Rockville, on the brief), for appellee.

Panel: MEREDITH, GRAEFF and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

THIEME, J.

Appellants,[1] initiated this action in the Circuit Court for Montgomery County seeking judicial review of an April 29, 2008, decision of the City of Rockville Planning Commission (the "Planning Commission"). That decision granted a use permit to and authorized appellee MHP Town Center, Inc. ("MHP") to build a 109 unit apartment complex on land located at the intersection of 254 North Washington Street and 13 Beall Avenue in Rockville, Maryland. Following a hearing, the circuit court affirmed the Planning Commission's decision by order entered on June 5, 2009. Appellants filed a timely appeal, raising two issues, which we quote:

1. Whether the decision of the Commission violates the City's adopted Adequate Public Facilities Ordinance and Adequate Public Facilities Standards.

2. Whether the decision of the Commission was erroneous as a matter of law because it does not contain the findings required by Sections 25-193(a) and 25-681 of the Rockville City Code.

Re-stated, we are asked in this appeal whether the Planning Commission erred by approving MHP's use application based on an erroneous construction of § 25-808 and § 25-802 of the City of Rockville's Adequate Public Facilities Ordinance ("APFO") and its implementing Adequate Public Facilities Standards ("APFS"), and failed to make the findings required by § 25-193(a) and § 25-861 of the APFO. For the reasons set forth below, our answer to both questions is in the affirmative, and the decision of the Planning Commission must be reversed.

### Factual Background and Proceedings Below

The property at issue is approximately 2.54 acres and is within the Town Center planning area of the City of Rockville. The property is owned by MHP, which is a wholly owned

---

1. Appellants include John Anselmo and other adjoining property owners and residents.

subsidiary of Montgomery Housing Partnership, Inc., a private non-profit organization. MHP purchased a vacant motel located at 254 North Washington Street in 1993 and renovated the property by converting it into a 60–unit affordable housing building, known as Beall's Grant I. The adjacent parcel was vacant and remained undeveloped. In 2005, MHP purchased this vacant property with the idea of providing additional affordable housing in Montgomery County. The property is zoned Town Center–1, a mixed-use zone which allows commercial and residential uses within the same development. See § 25–272(1) of the Rockville City Code.

On October 20, 2006, MHP filed a use permit application (USE 2007–00708) to construct a new affordable housing development, to be known as Beall's Grant II, at the northwest corner of North Washington Street and Beall Avenue in Rockville. The property is within the area encompassed by the Rockville Town Center Master Plan.

MHP sought the use permit for approval to construct a new four-and-one-half story building consisting of three levels of residential development on top of a parking garage. The plan was to provide 109 units of housing in proximity to the Metro and the Rockville Town Center. MHP met with members of the Staff of the City of Rockville on September 20, 2007, and, thereafter, made several revisions to its proposed development plans.

The proposed development is located in the Richard Montgomery High School, Julius West Middle School and Beall Elementary school cluster. The focus of the controversy in this case is on the impact the proposed development will have on anticipated student enrollment at Beall Elementary School after the project is completed. Specifically, appellants question whether the Planning Commission properly applied its APFO and APFS in approving MHP's use permit, as these requirements relate to school enrollment.

The APFS adopted by the City of Rockville to implement its APFO requires an assessment of school capacity at the project approval and use permit approval stages of development.

Because MHP was seeking a use permit, an analysis of school capacity was required at this stage of the process. Schools within the City of Rockville are operated and controlled by the Montgomery County Public Schools ("MCPS") and the State Board of Education. As a consequence, the provisions of the APFS specifically refer to the MCPS in connection with school capacity. The APFS states, in pertinent part: "The APFO test for schools in Rockville is based on the program capacity for each school as defined by MCPS." The City's view is that it may simply adopt the student capacity calculation made by the MCPS, and add to this figure the number of students anticipated by the new development in order to fulfill its obligations under the APFS. According to its brief: "There is nothing in the language of the APFS that requires City staff to perform any calculations to determine capacity nor any of the enumerated adjustments to the student census data for demand."

To that end, on January 23, 2008, MHP's counsel wrote to the City's Chief of Planning advising that there was sufficient capacity at Beall Elementary School to satisfy the City's APFO. MHP noted that, according to the MCPS data, there was program capacity at this school for 540 students, and that the projected enrollment for 2009–10 was 576 students. MHP then noted that the MCPS program capacity was to be used as the capacity basis for the APFO, "based on 110 percent of program capacity at all school levels within 2 years." Applying the 110 percent standard, MHP argued that this results in a "capacity basis for the APFO program of 594 students."

MHP's counsel noted that the MCPS had projected that the anticipated 2009–10 enrollment for Beall Elementary School would be 576 students, which is 18 students less than the 110% threshold. MHP estimated that the proposed development would add 5 students, if built as a mid-rise building, or 8 students if built as a garden apartment complex. In either event, MHP reasoned, "[s]ince Beall Elementary School will have an enrollment in two years which will be 18 students less than the school's capacity basis, any development which re-

sults in less than 18 students for the school satisfies the APFO standard for public schools."

On July 18, 2008, the City Staff adopted MHP's reasoning and concluded without further analysis that the APFO for school capacity was satisfied. City Staff prepared a formal report to the Planning Commission and recommended the approval of the use permit, with certain conditions that are not pertinent to the question presented in this case.

The Planning Commission met on July 23, 2008. The Chief of Planning for the City of Rockville testified that the City provides student data to MCPS, which does its own calculations. He acknowledged, however, *that MCPS does not include the City's student data in its calculations until after a development has been approved.* As a consequence, the MCPS estimates relied upon by MHP, and adopted by the City Staff, could not have taken into account any new students projected to attend Beall Elementary School as a result of MHP's project. Nevertheless, the Planning Commission accepted the Staff's recommendations and voted to approve MHP's use permit. The approval letter was formally issued on August 29, 2008.

Aggrieved, appellants appealed the Planning Commission's decision to the circuit court, which affirmed the decision of the Planning Commission. This appeal followed.

### Standard of Review

 "We review the final decision of the [Commission], rather than the circuit court, in accordance with the well established principles of administrative law." *Mueller v. People's Counsel for Baltimore County,* 177 Md.App. 43, 82, 934 A.2d 974 (2007); *see Motor Vehicle Administration v. Dove,* 413 Md. 70, 80, 991 A.2d 65 (2010) ("This Court reviews the agency's decision, not the decision of the Circuit Court, applying the same statutory standards used by the Circuit Court."). "Our review is 'limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administra-

tive decision is premised upon an erroneous conclusion of law.'" *Maryland–National Capital Park & Planning Comm'n. v. Greater Baden–Aquasco Citizens Ass'n.,* 412 Md. 73, 84, 985 A.2d 1160 (2009) (quoting *United Parcel Serv., Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226 (1994)); *see also Swoboda v. Wilder,* 173 Md. App. 615, 634–35, 920 A.2d 518 (2007); *Days Cove Reclamation Co. v. Queen Anne's County,* 146 Md.App. 469, 484–85, 807 A.2d 156 (2002).

▮▮▮▮ "The scope of judicial review of administrative fact-finding is a narrow and highly deferential one." *Trinity Assembly of God of Baltimore City, Inc. v. People's Counsel for Baltimore County,* 407 Md. 53, 78, 962 A.2d 404 (2008). We neither make an independent decision based on the evidence nor substitute our judgment for that of the administrative agency. *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376 (1999). Although our review of the administrative body's legal conclusions likewise is deferential, we "may reverse those decisions where the legal conclusions reached by that body are based on an erroneous interpretation or application of [the] statutes, regulations, and ordinances relevant and applicable to the property that is the subject of the dispute." *Greater Baden–Aquasco Citizens Ass'n.,* 412 Md. at 84, 985 A.2d 1160, quoting *People's Counsel for Baltimore County v. Surina,* 400 Md. 662, 682, 929 A.2d 899 (2007); *see Belvoir Farms Homeowners Ass'n., Inc. v. North,* 355 Md. 259, 267, 734 A.2d 227 (1999) (The decision of a local land use agency "is owed no deference when its conclusions are based upon an error of law.") Finally, "the court may only uphold the agency order if it is sustained by the agency's findings and for the reasons stated by the agency." *Harford County v. Earl E. Preston, Jr., Inc.,* 322 Md. 493, 505, 588 A.2d 772 (1991).

In deciding whether the Planning Commission in this case properly construed the municipal statute, we rely on settled principles of statutory construction. "When a statute's plain language is unambiguous, we need only to apply the statute as

written, and our efforts to ascertain the legislature's intent end there." *Crofton Convalescent Center, Inc. v. Dept. Of Health & Mental Hygiene,* 413 Md. 201, 216, 991 A.2d 1257 (2010); *see Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 570, 709 A.2d 749 (1998) ("[W]here the statutory language is plain and free from ambiguity and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself.")

## Discussion

■ The powers of a municipal planning commission generally derive from Article 66B of the Maryland Annotated Code, which provides in pertinent part: "[A] local jurisdiction shall enact, adopt, amend, and execute a plan as provided in this article and may create by ordinance a planning commission with the powers and duties set forth in this article." Md.Code Ann. (2005 Repl. Vol., 2009 Supp.), Art. 66B, § 3.01(a). In addition, the General Assembly has provided municipal governments the power to enact Adequate Public Facilities Ordinances, or APFO's, to, among other things, "facilitate orderly development and growth." Art. 66B, § 10.01(a).

The City of Rockville enacted an APFO, which became effective on November 1, 2005. Section 25–800(a) of Rockville's APFO directs the Mayor and City Council to implement the APFO by adopting "Adequate Public Facilities Standards . . . to ensure that the necessary public facilities will be available to serve proposed new development or redevelopment." As a consequence, "[a]ny development or redevelopment proposed within the City after [November 1, 2005] must comply with all requirements of the Adequate Public Facilities Standards, unless a waiver is granted pursuant to said standards." Section 25–801 of Rockville's APFO provides, in pertinent part, that "[a]n application for a use permit . . . must not be approved unless . . . the Planning Commission . . . determines that public facilities will be adequate to support and service the area of the proposed development."

The Mayor and City Council of Rockville adopted Adequate Public Facilities Standards ("APFS") on November 1, 2005.

Under the pertinent APFS, "[o]nce a development project is approved, capacity of public facilities required by that project is reserved, provided the project remains on its service commitment, as determined at the time of project approval." The APFS sets forth "Facility Capacity Schedules" for each of the six types of public services that development would require. With respect to schools, "[p]roject approval, subdivision approval or use permit approval reserves the capacity; at the building permit stage capacity is moved from the reserved to the used category."

The APFS goes on to state how school capacity and school demand are to be calculated. In terms of school capacity, the APFS provides that "[t]he program capacities determined annually by the Superintendent of Montgomery County Public Schools ... shall be used as the **capacity** basis for the APFO program, based on 110 percent of program capacity at all school levels within two years." (Emphasis added.)

School **demand,** however, is determined differently under the APFS adopted by the City of Rockville. With respect to school demand, the APFS provides, in pertinent part:

> School demand is based on actual student census in the most recent complete academic year, adjusted for the following: demographic changes, changes in district boundaries and other changes anticipated by planners with Montgomery County Public Schools; additional demand from approved development; [and] additional demand from the specific development being considered for approval.

In summary, although school capacity under the APFS is based exclusively on the capacity figures provided by the MCPS, the determination of school demand requires the consideration by the City of the other factors expressly set forth in the APFS.

Appellant contends on appeal that while MHP correctly identified one element of the school capacity for Beall Elementary School (by using the data for the 2009–10 school year), MHP made no effort to determine school demand after considering the factors contained in the APFS. Instead, appellants

argue that MHP simply looked to the projected school enrollment for the 2009–10 school year, added to this number the anticipated addition of students from the development, and then concluded without further analysis that there was available capacity because the number to be added (5 to 8) was less than 18, MCPS's indicated capacity for Beall Elementary School at 110 percent.

In addition, appellants argue that MHP failed to consider Beall's projected enrollment for the 2008–09 school year when determining capacity, which period also was within the two-year test window prescribed by the APFS. According to appellants, using the MCPS data for the 2008–09 school year, which had a projected enrollment of 589 students, adding 8 students from the proposed development would bring total demand at Beall Elementary School to 597 students, which exceeds the 110 percent capacity limit of 594 students.

In sum, appellants contend that simply using one year of the MCPS enrollment projections fails to satisfy the City of Rockville's APFS requirements and, in any event, a determination of school capacity is not the same as a determination of school demand, which is also required under the APFS. Appellants further contend that there is no evidence of record that the MCPS numbers took into account the City's reserved capacity for approved but unbuilt projects in its enrollment calculations. Finally, appellants contend that neither the Planning Commission's decision, nor the Staff report it relied upon, contained the factual findings required by Sections 25–193 and 25–681 of the Rockville City Code.

The City of Rockville contends that appellants misapprehend the meaning of the term "reserved" as it is used in Table II of the APFS. According to the City, there is no need to actually take into account any new students potentially added by a project until the building permit stage, when "capacity is moved from the reserved to the used category." At this later time, the City argues, "it is more certain that the project will actually come to fruition and the future students will arrive to take their places." The City argues that the phrase "re-

served" simply means required to provide information to MCPS so that MCPS can "take into account demand for spaces that will be generated from the approved but unbuilt development in its annual calculations." To do otherwise, the City contends, would be "analogous to a hotel taking a reservation in January for a stay Labor Day weekend and holding that room empty for nearly nine months, until such time as September arrives." Finally, to the extent factual findings were required, the City argues that the administrative record contains adequate information because "[a]ppellants are not in the dark regarding the facts relied upon by the Planning Commission for its decision in this matter." In the City's view, any remand for additional findings by the Planning Commission "would be a waste of administrative and judicial time and resources."

MHP contends that the Planning Commission "correctly determined that the capacity of the applicable Montgomery County public school was adequate to accommodate the students who would be generated by the proposed development." MHP argues, first, that by adopting the Staff recommendation, the Planning Commission correctly determined the APFS requirement for school capacity. MHP goes on to contend that once the "reserved" capacity for a proposed development is transmitted to the MCPS, the MCPS will then use this data and make any needed adjustments to particular school enrollments. To require the City to perform any additional calculations at the use permit stage, MHP maintains, would lead to absurd and even wasteful results because it is the MCPS that decides which students will attend a particular public school, and at what enrollment level. Finally, MHP argues, as does the City, that the Planning Commission made adequate findings, even if not specifically denominated as such.

As we see it, the problems with the Planning Commission's decision in this case are multi-fold. First, it is plain from the record that it conflated the concepts of "reserved" student capacity with "used" student capacity as those concepts are defined in the APFS. The City in its brief admits as much. Second, the Planning Commission failed to consider both

applicable years of the two year window, which is required by the APFS. Third, the Planning Commission failed to determine student demand in accordance with the standards set forth in the APFS. Student capacity and student demand, quite simply, are not the same concept under the APFS.

Although the City of Rockville may very well be correct that it makes little or no common sense to follow the plain language of the APFS and perform the required analysis, much less to "remove" student places from the pool of potential development near a school early in the process when a use permit is issued, we did not write the City's ordinance. The plain and unambiguous language of the APFS requires the Planning Commission to do all of these things. *See Mayor and Town Council of Oakland v. Mayor and Town Council Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036 (2006) ("if the plain language of the statute is unambiguous and consistent with the statute's patent purpose, we give effect to the statute as written.") However, in the case before us, the City did not take the actions required by its own ordinance. To the contrary, the methodology used by the Planning Commission in this case contravenes the express language of the APFO and the APFS enacted by the City. For that reason alone, the decision must be reversed.[2]

Further, the Planning Commission made no factual findings at either the public hearing or in its written decision, regarding the school demand that will result from the proposed project, in accordance with the requirements of the APFS. In the absence of such findings, the Planning Commission's decision cannot stand.

MHP contends that neither Section 25–193 nor Section 25–681 of the Rockville City Code require the Planning Commission to make "written" findings. MHP urges that the Plan-

---

**2.** The City is free to re-write its APFO and APFS, should it so desire, to better reflect its policy goals regarding the impact of development on the public schools. We, however, cannot re-write a municipal ordinance simply because the City would prefer a different outcome in this or some other case.

ning Commission's findings may be discerned by reviewing the transcript of the public hearing and the Staff Report. That may be true in the most general sense. Presumably, the Planning Commission could orally recite adequate findings into the record at the conclusion of its public hearing. That likely would suffice, but did not occur in this case. Manifestly, the better practice is for an agency to reduce its statutorily-required findings to writing in a separate document, be it a transcript or a written decision. *See* Maryland Rule 2–522(a) ("In a contested court trial, the judge, before or at the time judgment is entered, shall prepare and file or dictate into the record a brief statement of the reasons for the decision and the basis of determining any damages.")

In any event, Sections 25–193 and 25–681 of the APFO do require specific findings of fact regarding compliance with the APFS even if such are not in the form of a written report or written decision. *Cf. District Council v. Brandywine Enterprises, Inc.,* 350 Md. 339, 347–48, 711 A.2d 1346 (1998) (noting that the longstanding requirement of "written" findings by an administrative agency is fundamental to a party's right to be apprised of the reasons for the agency's decision and to facilitate judicial review). Although we generally agree with the appellees that the Planning Commission may rely on and adopt as their own the findings made in a Staff Report "if the Staff Report is thorough, well conceived, and contains adequate findings of fact," *Greater Baden–Aquasco Citizens Ass'n.,* 412 Md. at 110, 985 A.2d 1160 (footnote omitted), the Staff Report in this case, on the issue of the impact of the proposed development on Beall Elementary School, particularly school demand, is wholly deficient and relied upon an incorrect standard. Moreover, the Planning Commission simply incorporated the Staff's inadequate "findings" by reference, and made no independent assessment on the record of the Staff's analysis. *See Greater Baden–Aquasco Citizens Ass'n.,* 412 Md. at 82–83 n. 9, 985 A.2d 1160; *Colao v. County Council of Prince George's County,* 109 Md.App. 431, 460–61, 675 A.2d 148 (1996); *Cf. Montgomery v. Bd. of County Comm'rs. for Prince George's County,* 256 Md. 597, 603, 261

A.2d 447 (1970) (noting that the agency's mere adoption by reference of the conclusions of the staff is not a practice to be encouraged).

We decline appellees' invitation to search the administrative record for information that could support the Planning Commission's decision. Judicial review of the decision of an administrative agency differs from appellate review of a trial court judgment. "In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. *However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency." United Steelworkers v. Bethlehem Steel Corp.*, 298 Md. 665, 679, 472 A.2d 62 (1984) (Emphasis added); *see Baines v. Board of Liquor License Comm'rs. for Baltimore City,* 100 Md.App. 136, 142–43, 640 A.2d 232 (1994); *Baltimore Gas & Elec. Co. v. Public Service Comm'n. of Maryland,* 75 Md.App. 87, 99, 540 A.2d 820 (1988).

An administrative agency, such as the Planning Commission, "is required to issue findings of fact and conclusions of law in support of its opinion." *Board of Commissioners for St. Mary's County v. Southern Resources Management, Inc.*, 154 Md.App. 10, 34, 837 A.2d 1059 (2003); *see Sweeney v. Montgomery County,* 107 Md.App. 187, 196, 667 A.2d 922 (1995) ("The role of agency findings of fact in judicial review is crucial.") As Judge James Eyler explained for this Court in a recent zoning case:

The purpose of the findings requirement is threefold: (1) requiring an articulation of the reasoning process makes the decision-maker accountable to the public; (2) it allows the injured party to understand the reasons behind the agency's decision; and (3) most important, the findings requirement assists in facilitating judicial review of the agency's decision.

*Southern Resources Management, Inc.,* 154 Md.App. at 34, 837 A.2d 1059.

In this case, there were no findings whatsoever by the Planning Commission that there was adequate school capacity to support the proposed enrollment demand that likely will result from the proposed project. We will not search the record for evidence to support a decision not even made by the agency itself. *United Parcel Service, Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994); *see State Board of Physicians v. Bernstein,* 167 Md.App. 714, 764–65, 894 A.2d 621 (2006); *Maryland State Retirement & Pension Systems v. Martin,* 75 Md.App. 240, 246, 540 A.2d 1188 (1988).

In a last ditch effort to save the Planning Commission's decision, and its use permit, MHP contends that our agreement with appellants' contentions regarding the calculation of school demand would "raise issues of (1) conflict with State law and policies and (2) preemption." This contention is misplaced. As we noted above, Art. 66B, § 10.01(a)(1) expressly authorizes local jurisdictions to enact ordinances providing for adequate public facilities. As a consequence, the City of Rockville's ordinances are not preempted by State law, expressly or impliedly. *Ad + Soil, Inc. v. County Comm'rs. of Queen Anne's County,* 307 Md. 307, 324–28, 513 A.2d 893 (1986). Obviously, the City of Rockville cannot dictate to the MCPS (or the State Board of Education) any particular level of public school enrollment or assign students to specific schools. The ordinances at issue in this case do not even remotely purport to do so. However, a local jurisdiction can control development which, in turn, may affect local school enrollment. But this power in no way trenches upon the powers of the MCPS or the State Board of Education. To the contrary, the General Assembly has allowed, and we have approved, local legislation that effectuates traditional areas of local concern. *See Friel v. Triangle Oil Co.,* 76 Md.App. 96, 101–04, 543 A.2d 863 (1988) (upholding a temporary zoning moratorium); *Ungar v. State,* 63 Md.App. 472, 481–82, 492 A.2d 1336 (1985) (upholding a temporary sewer moratorium), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 604 (1986); *see also Tahoe–Sierra Preservation Council, Inc. v.*

*Tahoe Regional Planning Agency,* 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).

The decision of the circuit court is reversed.[3]

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED; COSTS TO BE PAID BY APPELLEES.**

---

**3.** In light of our disposition, we need not reach appellants' contention that the circuit court erred in excluding from its consideration certain materials that were not part of the administrative record. Should the matter again be presented to the Planning Commission, appellants will have the opportunity to include this information in the administrative record and obviate the need for an overly generous interpretation of judicial notice which they urge in this case. *See* Maryland Rule 7–208 ("Additional evidence in support of or against the agency's decision is not allowed unless permitted by law.")