676 A.2d 1017

**John M. ERB**

v.

**MARYLAND DEPARTMENT OF the ENVIRONMENT.**

**No. 1245, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 30, 1996.

248

250

John M. Erb, Edgewater, pro se.

Neile S. Friedman, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Nancy W. Young, Assistant Attorney General, on the brief), Baltimore, for Appellee.

Argued before CATHELL, DAVIS and MURPHY, JJ.

CATHELL, Judge.

John M. Erb, appellant, owns three adjoining lots of land in Calvert County. His application for a permit to construct a new on-site sewage disposal system, a septic system, as part of his plans to build a house on the property, was denied by the Maryland Department of the Environment (MDE), appellee. That decision was affirmed by the Circuit Court for Calvert County (Clagett, J., presiding). Appellant, appearing in *propria persona*, appeals therefrom. We rephrase the questions he raises:

1. Is the agency's decision supported by substantial evidence or based upon an error of law?

2. Did the State deprive appellant of his property without due process of law, in that appellant's application was denied while certain variances have been granted to owners of neighboring parcels?

3. Did the State take appellant's property without providing him with just compensation?

4. Did the circuit court err in refusing to allow appellant to introduce new evidence?

5. Did the circuit court err in denying appellant a trial by jury?

Perceiving no reversible error, we shall affirm the judgment of the circuit court.

## Factual and Procedural Background

Appellant has owned the undeveloped property in question since 1982, and it has been held by various members of his family since the 1920s. Combined, the lots total 6,000 square feet in area, approximately one-seventh of an acre. The lots are located on a steep slope; the grade is, on average, thirty-

three percent or greater. The only portion of the property that is not on such a steep slope contains a natural drainage swale.

As we have stated, appellant, desiring to build a house on the property, applied to the Calvert County Health Department (CCHD) for a permit to construct an on-site septic system. An evaluation of appellant's property was performed, and, in an attempt to accommodate appellant, certain regulatory requirements pertaining to the minimum size for lots were waived. *See* Code of Maryland Regulations (COMAR) 26.04.02.02B(1). Nonetheless, the CCHD, finding that the placement of a septic system on appellant's property could not be accomplished within the remaining regulatory guidelines, due to the natural characteristics of the property, and that such a system could pose a serious threat to public health and lead to the pollution of the waters of this State, denied his application.

An administrative hearing was held on June 3, 1993, before an Administrative Law Judge (ALJ). Among the evidence presented was the testimony of three experts: William Haygood, a licensed sanitarian in charge of the CCHD water and sewer programs; Jay Prager, the head of the Innovative and Alternative On–Site Sewage Disposal Program for MDE; and David Edwards, a senior civil design engineer, testifying on appellant's behalf.

Edwards presented a plan to regrade appellant's property to decrease the slope to twenty-five percent, the regulatory maximum for installation of a septic system, COMAR 26.04.02.04I, divert water runoff, install retaining walls, if necessary, and fill the drainage swale so as to create an area large enough for the location of the septic system. Edwards conceded, however, that even with these modifications appellant's property would still not meet all of the applicable requirements.

Haygood testified that, based upon his inspections of the property, a septic system placed thereon would fail because of the nature of the property. Of specific concern were the size

of the lots, the topography, and the presence of the natural drainage swale. See COMAR 26.04.02.04F, 26.04.02.04I, 26.04.02.04J. Haygood stated that the placement of septic systems in ground with a grade of greater than twenty-five percent is avoided because of "the possibility of sewage erupting from the side of the slope and draining into another area." Additionally, he testified that the placement of a septic system in or near a drainage swale decreases the effectiveness of the system and is, therefore, not permitted. *See* COMAR 26.04.02.04J.

Prager's testimony was consistent with Haygood's in respect to the unsuitability of appellant's property for a septic system. Prager did not, however, testify about the potential for use of an innovative and alternative sewage system—other types of sewage disposal systems that will function properly in areas that are inappropriate for conventional septic systems—on appellant's property.

The ALJ, in his Proposed Decision, concluded that appellant had failed to meet his burden of showing "that the septic system he proposes to install on his Calvert County property will comply with pertinent State Environmental statutes and regulations." *See* COMAR 26.01.02.28B(1). Specifically, the ALJ found that appellant's lots are located on an incline with an average grade of thirty-three percent and that appellant's property also contains a natural drainage swale, which fills with water following a moderate rainstorm. From the expert testimony, the ALJ concluded that the consequences of placing a septic system within twenty-five feet of such a steep slope is that sewage is likely to erupt out of the side of the slope and that the placement of a system within twenty-five feet of a drainage swale, even if it were filled in as suggested by Edwards, could result in an overflow to the surface, resulting in impermissible pollution of the waters of the State, *see* Md.Code (1987, 1993 Repl.Vol.), § 9–319 of the Environment Article (EN); COMAR 26.04.02.02E, as well as being a potential serious health hazard, *see* EN § 9–223.

Upon the filing of appellant's written exceptions, a hearing was held before a Final Decision Maker, a designee of the Secretary of the MDE. In his Final Decision and Order, the Final Decision Maker denied appellant's exceptions and affirmed the ALJ's decision. Appellant then challenged the MDE's decision before the Circuit Court for Calvert County. There, he filed a Motion For Leave To Amend Complaint, in which he sought to present arguments and evidence regarding the potential use of innovative and alternative on-site sewage system disposal technologies on his property. Holding that because the case was an appeal from an administrative agency and that the court may not consider matters outside the administrative record, the circuit court denied appellant's motion. The court went on to affirm the MDE's decision, finding that its decision was supported by competent, material, and substantial evidence and that the decision was not affected by any error of law.

### The Agency Decision

Judicial review of this administrative agency's decision is authorized by Maryland Code (1984, 1995 Repl.Vol.), § 10–222 of the State Government Article (SG). Under subsection (h), when exercising such review, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

In general,

[a] court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

*United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994); *Ward v. Department of Pub. Safety & Correctional Servs.,* 339 Md. 343, 347, 663 A.2d 66 (1995). We must determine in each case whether the agency's decision is "in accordance with the law or whether it is arbitrary, illegal, and capricious." *Moseman v. County Council,* 99 Md.App. 258, 262, 636 A.2d 499, *cert. denied,* 335 Md. 229, 643 A.2d 383 (1994); *Curry v. Department of Pub. Safety & Correctional Servs.,* 102 Md.App. 620, 626–27, 651 A.2d 390 (1994), *cert. denied,* 338 Md. 252, 657 A.2d 1182 (1995).

Our review of the agency's factual findings entails only an appraisal and evaluation of the agency's fact-finding and not an independent decision on the evidence. *Anderson v. Department of Pub. Safety & Correctional Servs.,* 330 Md. 187, 212, 623 A.2d 198 (1993). This examination seeks to find the substantiality of the evidence. "That is to say, a reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test to the final decisions of an administrative agency. . . ." *Baltimore Lutheran High Sch. Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701 (1985); *Anderson,* 330 Md. at 212, 623 A.2d 198; *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 511–13, 390 A.2d 1119 (1978); *Moseman,* 99 Md.App. at 262, 636 A.2d 499. In this context, " '[s]ubstantial evidence,' as the test for reviewing factual findings of administrative agencies, has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]' " *Bulluck,* 283 Md. at 512, 390 A.2d 1119 (quoting *Snowden v. Mayor of Baltimore,* 224 Md. 443, 448, 168 A.2d 390 (1961)). In terms of fact-finding, we must emphasize that under no circumstances may we substitute our judgment for that of the agency. *Anderson,* 330 Md. at 212, 623 A.2d 198. On the other hand, "[w]hen reviewing issues of law, . . . the court's review is expansive

and it may substitute its judgment for that of the agency." *Curry,* 102 Md.App. at 627, 651 A.2d 390; *Columbia Rd. Citizens' Ass'n v. Montgomery County,* 98 Md.App. 695, 698, 635 A.2d 30 (1994).

We are also obligated to view "the agency's decision in the light most favorable to the agency," since its decisions are *prima facie* correct and carry with them the presumption of validity. *Anderson,* 330 Md. at 213, 623 A.2d 198; *Bulluck,* 283 Md. at 513, 390 A.2d 1119. Finally, our review of an administrative agency's decision differs from our review of the decisions of the trial courts.

> In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.

*United Steelworkers of America v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984); *United Parcel,* 336 Md. at 577, 650 A.2d 226.

Pursuant to its authority under EN §§ 9–252 and 9–510, MDE has promulgated numerous regulations governing the disposal of sewage and sewage disposal systems. Several of these are applicable to the case *sub judice:* COMAR 26.04.02.02E states: "A person may not dispose of sewage, body, or industrial wastes in any manner which may cause pollution of the ground surface, the waters of the State, or create a nuisance."; COMAR 26.04.02.02T prohibits sewage from being "disposed of in any manner that will cause contamination of potable water supply systems, and waters of the State, or create a nuisance."; COMAR 26.04.02.02B(2) states: "If, in the opinion of the [MDE], the lot cannot provide for a safe and adequate . . . on-site waste disposal system, a permit shall be denied."; COMAR 26.04.02.04I forbids the location of an on-site disposal system "on slopes in excess of 25 percent.";

and COMAR 26.04.02.04J(3) requires a separation of at least twenty-five feet between an on-site disposal system and a drainage swale.

Drawing from the expert testimony, photographic evidence, and other evidence presented, the ALJ made the following findings of fact: the average grade of appellant's lots is thirty-three percent; the only portion of the property that is not on such a steep slope contains a natural drainage swale; even if the property were to be regraded, there is a high probability that a septic system on appellant's lots would fail; the installation of a "septic system on the steep grade could result in effluent and storm water collecting together [that] ... could cause it to erupt from the sides of [the] incline, resulting in the pollution of the surface"; and "[i]nstalling the septic system in the area where the natural swale runs ... could also allow surface water to collect in the septic system trench ... that would eventually ... overflow to the surface." In sum, the ALJ found as fact that the natural characteristics of appellant's property precluded the safe installation of the proposed septic system within the regulatory guidelines. Given the regulatory framework and the expert testimony adduced at the hearing, we hold that there was substantial evidence from which the ALJ could reasonably conclude that the agency's decision to deny appellant his permit was proper.

Before the ALJ, appellant provided evidence of several nearby properties that contained either excessive grades, drainage swales, or both, in an attempt to show, in part, that the agency freely granted variances and, therefore, should not have denied his application. The Assistant Attorney General who appeared before the ALJ on behalf of MDE repeatedly objected to this evidence on relevancy grounds, stating that appellant had not shown that the natural characteristics of these other properties were *identical* to his own. The ALJ took MDE's objections under advisement and allowed appellant to present his evidence, evidence which, we believe, is relevant to appellant's case. To the extent that appellant may have been challenging the denial of his permit application in

light of what he perceived to be CCHD's practice of liberally granting variances to the same regulatory requirements, evidence of the agency's practices is both probative and relevant. *See, e.g., Ad + Soil, Inc. v. County Comm'rs,* 307 Md. 307, 320–22, 513 A.2d 893 (1986). Be that as it may, the ALJ found as fact that, while these other properties did contain natural characteristics similar to those of appellant, the other "lots ha[d] space available in level areas and in areas that were not located near a drainage swale that were suitable to install a septic system." There was substantial evidence to support this finding.

### Due Process

As mentioned above, before the ALJ, appellant presented extensive evidence regarding variances that had been granted to neighboring landowners whose properties have similar natural characteristics. In part, we believe, appellant presented this evidence in an attempt to show that the agency discriminated against him. As we have previously set forth, we hold that the record contains substantial evidence that appellant's application was denied due to the unique attributes of his property.[1] Correlatively, we hold that appellant's permit application was not denied as a result of discriminatory or arbitrary agency action.

Faced with an allegation that an administrative agency had discriminated against a permit applicant, the Court of Appeals stated, in *Howard Sports Daily, Inc. v. Public Serv. Comm'n,* 179 Md. 355, 358–59, 18 A.2d 210 (1941):

Unquestionably, if a law is applied and administered by public authority "with an evil eye and an unequal hand" so as to make unjust discrimination between persons in similar circumstances, material to their rights, such denial of equal justice is within the prohibition of the Constitution. *But in considering the application of the constitutional safeguard, due regard must be given to the principle that the State*

---

1. This is *not* a zoning variance case.

*may regulate and restrict the freedom of the individual to act whenever such regulation or restraint is essential to the protection of the public safety, health or morals.* Chief Justice Taft thus defined "due process" as guaranteed by the Fourteenth Amendment: "The due process clause requires that every man shall have the protection of his day in court, and the benefit of the general law, a law which hears before it condemns which proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society." *Truax v. Corrigan,* 257 U.S. 312, 332, 42 S.Ct. 124, 129 [66 L.Ed. 254 (1921) ].

... Whether a complainant has been deprived of due process of law ... by action of an administrative body depends upon whether it acted contrary to the statutes and rules and with arbitrary discrimination.... The State has the undoubted right to enact legislation in the legitimate exercise of its police power. The sovereignty of the State would be a mockery if it lacked the power to compel its citizens to respect its laws.... When the cry of "property rights" is raised in an effort to circumvent the provisions of a law designed to promote and protect the public interest, equity will not aid the attempt by affording the extraordinary remedy of injunction. [Some citations omitted, emphasis added.]

Accord *Bruce v. Director, Dep't of Chesapeake Bay Affairs,* 261 Md. 585, 600–01, 276 A.2d 200 (1971).

▆▆▆ That this State has broad police powers that it may use to further the public safety, health, and welfare cannot be questioned, and the regulation of sewage disposal is but one of the many areas properly regulated through this power. *Millison v. Secretary of Health & Mental Hygiene,* 32 Md.App. 165, 170–72, 359 A.2d 247, *cert. denied,* 278 Md. 728 (1976); *see also Robert T. Foley Co. v. Washington Suburban Sanitary Comm'n,* 283 Md. 140, 148–50, 389 A.2d 350 (1978). "In the exercise of the police power the State may lawfully impose such burdens and restraints on private rights as may be

reasonably necessary and proper to secure the general welfare." *Montgomery County v. Fields Rd. Corp.*, 282 Md. 575, 583, 386 A.2d 344 (1978). Pursuant to its statutory authority, MDE has promulgated numerous regulations governing the disposal of sewage and sewage disposal systems in order to further the public health and safety. When, based upon the agency's expertise, deviation from these regulations may be accomplished without compromising the public health and safety, MDE may, in its discretion, issue a permit. In appellant's case, however, notwithstanding appellant's charge that he is the victim of discrimination, he has not shown that the agency acted in a discriminatory manner. Rather, the record illustrates how the agency attempted to accommodate appellant but ultimately was unable to do so and maintain adequate health safeguards. The decision to deny a permit to appellant was one within MDE's discretion, and, in the case at bar, it has not been shown that it abused that discretion.

In terms of due process, before the ALJ, appellant had a full adversarial hearing. Although he waived the right, appellant was entitled to be represented by counsel. He was afforded the opportunity to present evidence and witnesses on his own behalf and to cross-examine opposing witnesses. When the matter did not go as planned, appellant utilized his right of appeal to the courts of this State. Not only has appellant not been deprived of his property without due process of law, appellant has received an abundance of process. That the matter has not gone as appellant would have liked does not amount to a denial of the process that is due. *See Maryland Aggregates Ass'n v. State*, 337 Md. 658, 686–88, 655 A.2d 886 (1995); *Maryland State Police v. Zeigler*, 330 Md. 540, 559, 625 A.2d 914 (1993) ("Procedural due process, guaranteed to persons in the State by Article 24 of the Maryland Declaration of Rights, requires that administrative agencies performing adjudicatory or quasi-judicial functions observe the basic principles of fairness as to parties appearing before them."); *Department of Human Resources v. Thompson*, 103 Md.App. 175, 197, 652 A.2d 1183 (1995) (holding ALJ's decision to preclude consideration of complainant's chal-

lenge to agency's findings infringed upon complainant's right to due process). *See generally* 1 Am.Jur.2d Administrative Law §§ 148–57 (1962).

## Taking Without Just Compensation

 Citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), appellant contends that, if the State does not grant him his permit, it should provide him with just compensation for his property. We hold that appellant's property has not been taken within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 40 of the Maryland Constitution.[2]

The facts of *Lucas* are as follows: In 1986, Lucas purchased two beachfront lots, intending to build single-family houses on them. Prior to construction, the South Carolina legislature enacted the Beachfront Management Act, which effectively barred Lucas from erecting any permanent structures on the property. Thereafter, he filed suit against the state agency charged with administering the Act. Lucas conceded that the Act was a lawful exercise of the state's police power; nevertheless, he argued that the construction ban deprived him of all economically beneficial use of his property and, therefore, constituted a taking under the Fifth and Fourteenth Amendments. The Supreme Court, in a comprehensive review of its Fifth Amendment Takings Clause jurisprudence, identified "two discrete categories of regulatory action [that are] compensable without case-specific inquiry into the public interest advanced in support of the restraint." *Lucas*, 505 U.S. at 1015, 112 S.Ct. at 2893. The first encompasses regulations that bring about an actual physical invasion of the property. This aspect is not implicated in the case *sub judice*. The

---

**2.** These provisions have the same meaning and effect, and "the decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities" for both provisions. *Bureau of Mines v. George's Creek Coal & Land Co.*, 272 Md. 143, 156, 321 A.2d 748 (1974); *Allied American Mut. Fire. Ins. Co. v. Comm'r of Motor Vehicles*, 219 Md. 607, 616, 150 A.2d 421 (1959).

second concerns situations in which regulations deny a property owner of "all economically beneficial or productive use of land." *Id.; see also Offen v. County Council,* 96 Md.App. 526, 551–52, 625 A.2d 424 (1993) (discussing *Lucas*), *aff'd. in part, rev'd in part,* 334 Md. 499, 639 A.2d 1070 (1994).

 It is with this second class that we are concerned, and, in order for us to ascertain whether appellant's property has been taken, we must first determine that MDE's regulatory scheme either "does not substantially advance legitimate state interests *or* denies an owner economically viable use of his land." *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (emphasis added); *Lucas,* 505 U.S. at 1016–18, 112 S.Ct. at 2894. Even if appellant were to establish no viable economic use, he is only entitled to compensation for his property if he has been denied all the economically beneficial use thereof under a regulatory scheme that does *"more than duplicate the result that could have been achieved ... under the State's law of private nuisance."* *Lucas,* 505 U.S. at 1029, 112 S.Ct. at 2900 (emphasis added); *Hebron Sav. Bank v. City of Salisbury,* 259 Md. 294, 300–01, 269 A.2d 597 (1970); *Offen,* 96 Md.App. at 553–55, 625 A.2d 424. See also *Raynor v. Maryland Dept. of Health & Mental Hygiene,* 110 Md.App. 165, 676 A.2d 973 (1996), intended to be filed concurrently herewith] where we decline to find a taking where a ferret is destroyed in order to be tested for rabies and our more extensive discussion of *Lucas* in *Steel v. Cape Corp.,* 111 Md.App. 1, 677 A.2d 634 (1996) [No. 1541, 1995 Term, also intended to be filed concurrently herewith], in which we find an unconstitutional taking resulting from a statutory scheme permissible under the police power but which results in no viable economic use of the property and which *does not involve traditional nuisance abatement.*

We first note that, while the inability to build on the property at the present time may greatly diminish its current value, appellant has not presented sufficient evidence to establish that he has been denied all economically beneficial uses of

the property. The record is sparse in regard to the other uses or remaining utility of the property in question, and, moreover, it is possible, as we mention, *infra*, that appellant will be able to utilize alternate means of sewage disposal.[3]

Further, and more important, as discussed above, the power to regulate sewage disposal systems rests within the police power of this State. The regulatory scheme set up by MDE does no more than could be accomplished under the nuisance laws of this State. *Cf. Washington Suburban Sanitary Comm'n v. CAE–Link Corp.*, 330 Md. 115, 622 A.2d 745 (1993), *cert. denied*, 510 U.S. 907, 114 S.Ct. 288, 126 L.Ed.2d 238 (1994). Even if MDE's regulatory scheme—a scheme designed to prevent appellant from creating a nuisance on his property—were to leave his property economically barren, no compensation would be due because the State has a right—and, indeed, an obligation—to regulate against the creation of nuisances. This principle was clearly set forth by the Supreme Court in *Lucas:*

> Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with. . . . It seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers; "[a]s long recognized, some values are enjoyed under an implied limitation and must yield to the police power." *Pennsylvania Coal Co. v. Mahon,* [260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922) ] . . . .
>
> . . . A law or decree with such an effect must, in other words, do no more than duplicate the result that could have been achieved in the courts . . . under the State's law of

---

**3.** We were advised at oral argument that one alternative method has been rejected.

private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally. . . .

*Lucas*, 505 U.S. at 1027–29, 112 S.Ct. at 2899–2901 (some citations omitted, footnotes omitted). *See also Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) (limitation on dredging and pit excavating); *Miller v. Schoene*, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928) (removal of infectious trees); *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (prohibition against the production of bricks); *Reinman v. City of Little Rock*, 237 U.S. 171, 35 S.Ct. 511, 59 L.Ed. 900 (1915) (horse stable prohibitions); *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887) (prohibition of the manufacture of alcoholic beverages); and see Justice Brandeis's dissent in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).

■■■ The creation of sewage disposal systems that are, or may be, detrimental to public health may constitute nuisances and be subject to abatement under the law of private nuisance. This power to abate nuisances is independent of, though not inconsistent with, the regulatory power of the states, when they adopt regulatory practices to prevent the creation of such nuisances. The regulation of potential nuisances, alone, does not constitute an unconstitutional taking, even if no present economically viable use remains. To prevent by regulation that which is forbidden in the first instance under the laws relating to the use of private property is not a taking. Lucas makes that clear. Simply stated, there exist properties that are unbuildable, whether or not regulated, due to legitimate health and/or nuisance concerns. To prohibit by regulation that which is, in any event, prohibited is not an unconstitutional taking.

■■■ In the instant case, MDE's regulations serve to proscribe a nuisance from coming into existence on appellant's property. The power to regulate in this area is one facet of the State's power to regulate in order to protect the public

health and safety. Appellant's property has not been taken for public use; rather, his development of it has been restricted to prevent public harm. In general, a property owner must use his property so as not to injure others, and a state is allowed to promulgate regulations that achieve this result. Along the same lines, a property owner generally has the constitutional right to make any use of his property he desires, so long as he does not endanger or threaten the health and safety of the general public. Were appellant allowed to install a septic system, given the expert testimony that, in all likelihood, the system would fail, it would constitute a threat to public health. The State may prohibit such use, and the fact that MDE's regulations prevent appellant from enjoying his property in the manner he would like does not render the agency's actions a taking for which compensation is due. *See Bureau of Mines v. George's Creek Coal & Land Co.*, 272 Md. 143, 165, 321 A.2d 748 (1974); *see also Hebron Sav. Bank*, 259 Md. at 300–01, 269 A.2d 597. There is no right, and there has never been any, incidental to the use of private property to create, conduct, or permit a nuisance thereon. A regulation prohibiting a nuisance is not, and cannot be, the taking or interference with a right incident to the use of private property. A right to maintain a nuisance does not exist in the first instance.

### Presentation of New Evidence

On April 7, 1995, appellant filed in the circuit court a Motion for Leave to Amend Complaint. Through it, he sought to present additional evidence in respect to neighboring sites that had been granted variances from regulatory requirements and information on innovative and alternative sewage systems that he believed would work on his property. His motion was denied.

■■■■ Generally, the scope of a court's review of agency action under the Administrative Procedure Act is confined to the record made before the administrative agency. *United Parcel, supra*, 336 Md. at 577, 650 A.2d 226; *Consumer Protection Div. Office of the Attorney Gen. v. Consumer*

*Publishing Co.*, 304 Md. 731, 749, 501 A.2d 48 (1985); *Warner v. Town of Ocean City*, 81 Md.App. 176, 193–94, 567 A.2d 160 (1989). The presentation of new evidence to the circuit court is inconsistent with the narrow scope of judicial review of agency decisions. Were new evidence to be allowed before the circuit court and the court permitted to take that evidence into consideration when rendering its decision, the circuit court would no longer be focusing its attention upon the proper considerations. Rather, a party would, in most cases, be presenting this new evidence to detract from that evidence upon which the agency based its decision, and, therefore, the court would not be focusing upon whether the record itself contains substantial evidence to support the agency's decision.

■■■ There exists a narrow exception to this rule, and it is limited to evidence of alleged procedural irregularities at the agency level: "A party may offer testimony [to the circuit court] on alleged irregularities in procedure before the presiding officer that do not appear on the record." SG § 10–222(g)(2); *Ad + Soil, supra*, 307 Md. at 320–22, 513 A.2d 893; *Consumer Protection Div.*, 304 Md. at 750, 501 A.2d 48. To the extent that appellant was offering the evidence of subsequent variances granted to neighboring landowners in an attempt to show that the agency was acting in an arbitrary or inconsistent manner—*i.e.*, granting variances to certain landowners while denying them to appellant—that evidence *might* be admissible before the court. *Ad + Soil*, 307 Md. at 320–22, 513 A.2d 893; *Aspen Hill Venture v. Montgomery County Council*, 265 Md. 303, 316–17, 289 A.2d 303 (1972). "[E]vidence of subsequent inconsistent decisions of the same [administrative] body [is] highly reliable and probative" because it directly relates to the possible "arbitrary, capricious, or discriminatory quality" of the administrative body's actions. *Ad + Soil*, 307 Md. at 321, 513 A.2d 893. "[S]uch evidence [is] admissible before the reviewing court as an exception to the general rule restricting judicial review to evidence in the administrative record." *Id.*

 In the case *sub judice,* however, any error was harmless, in that the record contained the evidence appellant had presented to the ALJ on variances granted to neighboring landowners and any new evidence presented for the first time before the circuit court would merely have been cumulative. More important, as discussed, the record contained substantial evidence to the effect that it was the inordinate confluence of factors contrary to the safe operation of an on-site septic system that caused MDE to deny the permit in appellant's case—a confluence of factors not extant in respect to the permits granted the neighbors—and that the decision to deny appellant his permit was not the result of an arbitrary, inconsistent, or discriminatory agency action.

As for the evidence on innovative and alternative systems, notwithstanding the subsequent rejection of one of appellant's proposed alternative systems, those materials and proposals have not yet been ruled upon by CCHD and MDE. Appellant's new proposals are independent of and dissimilar from his regrading proposal. Because appellant did not present evidence of such systems before the ALJ, MDE could not review the proposals at that time in order to determine if they could safely treat and dispose of the sewage attendant to appellant's residence on the property. "[A] person may not obtain judicial review of a matter when he or she failed to properly raise the matter before the administrative agency." *Heft v. Maryland Racing Comm'n,* 323 Md. 257, 273–74, 592 A.2d 1110 (1991); *see* Md. Rule 7–208(c). Thus, the circuit court properly declined to review proposals that had yet to be ruled upon by the agency.

### Jury Trial

 Appellant desired a trial by jury before the circuit court; he was not, however, afforded one. Simply stated, when a circuit court sits for the purpose of reviewing the decision of an administrative agency under the State Administrative Procedure Act, there is no right to a jury trial. Section 10–222(g) of the State Government Article flatly proscribes such a procedure: "The court shall conduct a proceed-

ing under this section without a jury." *See County Council v. Investors Funding Corp.*, 270 Md. 403, 437 n. 12, 312 A.2d 225 (1973) ("That no provision is made for a de novo trial on appeal from the final action of [an administrative agency] does not constitute a deprivation of the right to a jury trial . . . ."); *see also Maryland Aggregates, supra,* 337 Md. at 680, 655 A.2d 886; *Esslinger v. Baltimore City,* 95 Md.App. 607, 624, 622 A.2d 774, *cert. denied,* 331 Md. 479, 628 A.2d 1066 (1993). In any event, our review of the record has failed to disclose that appellant made any demand for a jury trial to the circuit court. Thus, even if appellant had had a right to a jury trial, it was waived. Md. Rule 2–325(d).

### Conclusion

In closing, we note, as Judge Clagett so correctly pointed out, this decision does not permanently foreclose appellant's right to build upon his property. Appellant is entitled to obtain further proposals for the design and construction of disposal systems and to submit them to the CCHD for consideration.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**