881 A.2d 1161

**ANNE ARUNDEL COUNTY, Maryland**

v.

**Jane P. NES et al.**

**No. 1687, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

July 12, 2005.

Reconsideration Granted Sept. 1, 2005.

Patricia A. Logan (Linda M. Schuett, County Atty., on brief), Annapolis, for Appellant.

Jefferson V. Wright (William N. Krulak, Jr., Ronald S. Schimel, Miles & Stockbridge, P.C., on the brief), Baltimore, for Appellees.

Panel: DAVIS, WILLIAM W. WENNER, (retired, specially assigned), RAYMOND G. THIEME, JR. (retired, specially assigned), JJ.

DAVIS, Judge.

Appellees, Jane P. Nes and Tanyard Springs Limited Partnership, sought to subdivide a large tract of land in Anne Arundel County. They applied to the County's Director of Planning and Code Enforcement (PACE) for a waiver of school capacity requirements imposed by County ordinances. PACE denied the waiver request. Appellees then appealed the denial to the County's Board of Appeals, which affirmed PACE's decision. Appellees sought judicial review in the Circuit Court for Anne Arundel County. The circuit court granted appellees' requested relief, remanding the matter to the Board of Appeals for further proceedings on the threshold issue of whether school capacity was in fact inadequate.

Appellant, Anne Arundel County, appealed the circuit court's judgment, presenting three questions for our review:

I. Was the Board of Appeals' decision that Nes did not meet the criteria for a waiver of school adequacy requirements under Article 26 § 2–411 of the Anne Arundel County Code supported by substantial evidence, and did the Board correctly conclude as a matter of law that the issue of whether schools were adequate under former Article 26 § 2–416 of the Anne Arundel County Code was not properly before the Board?

II. Did the circuit court correctly remand for the Board of Appeals to decide the issue of whether schools are adequate, in light of the intervening change of law that has resulted in school adequacy now being determined legislatively and not administratively, and that has made moot any review of that issue by the Board of Appeals?

III. Assuming, *arguendo*, that the Board of Appeals should now decide the issue of whether schools are adequate, did the circuit court correctly rule that it may

consider the 1998 APF Agreement on the question of whether schools are adequate?

We conclude that the adequacy of the schools' capacity was not an issue properly before the Board of Appeals for decision. Therefore, we shall reverse the judgment of the circuit court, and, in effect, affirm the Board of Appeals' decision that the issue of school adequacy was not properly before it and that appellees had abandoned their quest for a waiver.

## BACKGROUND

Appellees own a 277–acre tract of land in Anne Arundel County, which they seek to subdivide for industrial, commercial, and residential uses. Before subdivision can occur, the County's ordinances require that there be in place adequate public facilities (e.g., roads, water supply) to serve the new subdivision. This appeal concerns the requirement for adequate capacity at nearby schools as a precondition to the County's approval of residential subdivisions. *See* Article 26 § 2–416 of the Anne Arundel County Code.[1]

---

1. Unless otherwise stated, all Code citations are to the Anne Arundel County Code. The Preamble to Article 26, "Subdivisions; Title 2, Plat Submission and Approval Procedures" states, in relevant part to this appeal, that the purpose of the Ordinance is "to revise the standards and procedures for determining the adequacy of public facilities for schools for subdivisions and certain other forms of development; ... requiring that a subdivision be served by public schools with adequate capacity for additional students; ... specifying when the determination of school adequacy takes place; providing for the manner of determining school adequacy by the Office Planning and Zoning; ... providing for the contents and duration of an approval of school adequacy; ... and repealing inconsistent provisions applicable to mixed-use developments; and generally relating to the adequacy of public facilities for schools."

Section 2–416, captioned "Schools," under Plat Submission and Approval Procedures, initially provides that this Section applies only to residential occupancy not dedicated to the elderly and, after defining applicable terms, delineates the procedure for taking into account whether public education is adequate to service the proposed the development.

Subsection (C) provides that "a proposed subdivision shall be served by adequate public elementary, middle, and high schools determined in accordance with this Section." The basis for the determination of the

In routine subdivision cases, the County's ordinances provide a seamless process for subdivision applications and agency review for adequate public facilities. Appellees pursued an alternative, two-step subdivision process, not expressly spelled out in the applicable local ordinances, but utilized in Anne Arundel County for complex subdivisions.

The first step in this alternative procedure begins with a landowner's application for infrastructure plan approval. Appellees explain the rationale for the process in their brief:

> Typically, an infrastructure plat would be accompanied by a thoroughly negotiated agreement [between the landowner and the County] addressing all of the adequate public facilities issues. . . . Use of this process facilitated the longer-range planning and development process necessary for larger developments, allowing developers of large projects to have the assurance that the substantial up-front capital investment in major infrastructure, including public facilities and project engineering, could be recovered through the unimpeded completion of the project.

> An infrastructure plat . . . typically showed large reserve or bulk parcels which could later be re-subdivided into buildable lots, and allowed County planners to evaluate and approve the hard engineering aspects of a development, including the main utilities, the main stem roads, and major facilities for water, sewer, roads, and schools.

In deposition testimony taken in a judicial review action related to this case, counsel who had represented appellees also explained that, although this infrastructure plat phase was concerned with "iron[ing] out those details so as to make subsequent ultimate development of the project easier," a developer still "had to have a pretty good idea of what [the

adequacy of public elementary, middle, or high schools for a subdivision under Subsection (J) are:(1) The geographical attendance areas within which the subdivision will be located as determined by the Board of Education; and (2) the designation of the schools serving those geographical attendance areas as "open" or "closed" in the school utilization chart for the third school year after the school year in which the determination under this Subsection is made.

developer] was planning for, because your infrastructure improvements had to accommodate it." Thus, in some cases, the issue of adequate school capacity has been decided in the infrastructure plat phase, as opposed to when further subdivisions are made to create individual, "buildable" lots.

In 1998, appellees were negotiating for an adequate public facilities (APF) agreement with the County so that it could obtain approval of its infrastructure plat to subdivide the tract at issue here. PACE agreed to negotiate all public facilities issues except the adequacy of schools. As to schools, the appellees were instructed to apply for a waiver, under Article 26 § 2–411,[2] from the adequacy of schools requirement then

---

**2.** The section provides:

§ 2–411. Waivers.

(a) This section applies exclusively to waivers sought to the requirements of this Part 2 of this subtitle and to appeals from other administrative decisions relating to the provisions of Part 2 of this subtitle.

(b) On request by a subdivider, the Planning and Zoning Officer may waive the application of one or more of the requirements of this Part 2 of this subtitle to a proposed subdivision, if the Planning and Zoning Officer finds that:

(1) the application of the requirement to the proposed subdivision would result in peculiar and exceptional practical difficulty to or exceptional and demonstrable undue hardship on the subdivider, other than financial considerations;

(2) the physical features and other characteristics of the proposed subdivision are such that the waiver may be granted without impairing the intent and purpose of the requirement for which the waiver has been requested, the other provisions of this article, the Zoning Article, and the General Development Plan;

(3) the grant of the waiver will not endanger or present a threat to the public health, safety, or welfare; and

(4) the waiver is the minimum relief available and necessary to relieve the difficulty or hardship to the subdivider.

(c) The Planning and Zoning Officer may impose such conditions on the grant of the waiver as are reasonably necessary to further the intent of the requirement for which the waiver was requested and to ensure the protection of the public health, safety, and welfare.

(d) A request for a waiver shall include the name and address of each person who owns property located within 175 feet of the boundaries of the proposed subdivision for which the waiver is requested.

(e) Before acting on a request for a waiver, the Planning and Zoning Officer shall consider the recommendation of any County or State office, department, or agency having jurisdiction over the subject matter of the requirement for which the waiver is requested.

codified at Article 26 § 2–416.[3]

Appellees submitted a waiver request to PACE on June 27, 1998. In the request, appellee Jane Nes (individually, apparently, and *pro se*) conceded the inadequacy of nearby school capacity, writing, "Solley Elementary School, which borders Tanyard Springs, presently does not have sufficient capacity for the ... subdivision, whose initial plan requires space for 555 [townhouse] units." She then explained the reasons she thought a waiver should be granted.

PACE denied the waiver on July 20, 1998. The decision issued by PACE was illogical in that it simply recited that the County's Board of Education advised PACE that appellees' proposed development would cause the local elementary and middle school to exceed their capacity, and, for that reason—a reason which would require a denial in every case—the waiver was denied. On that same date, appellees noted their appeal to the County's Board of Appeals.

While appellees' appeal was pending before the Board of Appeals, they and the County were finalizing the terms of their APF agreement for the infrastructure plan, regarding public facilities other than schools. The parties reached a compromise regarding other public facilities, and executed the APF agreement shortly before the Board of Appeals hearing, but that fact was not disclosed to the Board of Appeals because of a "secrecy clause" in the agreement. The clause stated:

> F. The parties acknowledge and agree that this Agreement shall not in any way be referenced or mentioned verbally or in writing in or at any hearing, trial, document,

---

(f) A person aggrieved by the decision of the Planning and Zoning Officer on a request for a waiver under this section may appeal the decision to the County Board of Appeals.
(Code 1967, § 13–134; Bill No. 74-00, §§ 1,2)
 Charter reference— § 601 et seq.

**3.** No formal instruction was given. There is no documentation in the record showing a decision from PACE that school capacity was actually inadequate.

writing or other item which is or may be presented to the County Board of Appeals or court with regard to any waiver to or issue of County school capacity requirements. In the event, one party or such party's agents, employees or contractors mentions or references this Agreement or in any way makes such known directly or indirectly through a third party or otherwise, the other party to this Agreement may at any time thereafter abrogate its obligations under this Agreement without penalty.

Although Nes had conceded in her waiver application with PACE that school capacity was inadequate, and that a waiver was necessary, appellees advanced an altogether different argument before the Board of Appeals. Before that tribunal, appellees argued:

It's the position of the Applicants . . . that this waiver is not necessary, that it's moot, and that we really didn't need it in the first place. We're here because the County told us we needed the waiver, and without the waiver we couldn't proceed with our subdivision. Having filed for the waiver, the waiver was turned down. But our position is that the County was improper in advising that a waiver was necessary in the first place, because we believe schools are adequate, and we believe that, even after the waiver was denied, schools were then and today remain adequate.

Moreover, in closing argument, appellees argued to the Board in the clearest of terms:

You can determine . . . that the underlying basis to ask for a waiver was inappropriate.

And *that's what we're asking you to do. I'm not asking you, and I said this in the beginning, to grant the waiver.* Because what happened is, we were told to file for a waiver, and the county changed its waiver policy and won't give a waiver.

(Emphasis added.) Appellant argued to the Board, however, that it had no "jurisdiction" to determine the threshold issue of the adequacy of the schools' capacity, because that was not

an issue presented to or decided by PACE in the original petition.

The Board of Appeals decided that appellees failed to show their entitlement to a waiver, and further, that the underlying issue of the schools' capacity was not properly brought before it. The Board explained in its opinion:

At the hearings before the Board, the Petitioner argued strenuously that the school facilities are adequate to accommodate the students likely to be generated by the proposed subdivision. The Board finds, however, that only the Petitioner's request for a waiver to the requirement that school facilities be adequate to accommodate the students likely to be generated from the proposed subdivision is properly before the Board. The issue in this case is whether the Petitioner meets the criteria for her waiver request. The Board does not have authority over matters that have not been properly appealed to this Board. [Witnesses for both the Petitioner and the County] testified that the proposed plat was not ready for approval, but rather, is currently under review by the County. The proposed plat has been neither approved nor denied. While this Board may, for example, have jurisdiction over a decision by the County on the approval or denial of the plat no such decision has occurred. In fact, both the County and Petitioner agree that any such decision would be premature.

Appellees pursued judicial review in the circuit court, contending that the Board erred in not deciding the issue of whether school capacity was, in fact, adequate and, alternatively, contending that the Board's conclusion that appellees had not made out a case for waiver was unsupported by substantial evidence. Additionally, appellees contended that the parties' APF agreement should be admitted in that proceeding—although it was not admitted before the Board of Appeals—because it was relevant to the issue of whether a decision on school capacity was really premature. Appellees' argument seems to have been that, if the County were willing to reach agreements on the adequacy of other public facilities, then the infrastructure plat must be a sufficiently final stage

to allow for review of school adequacy. Appellees also submitted—and the circuit court admitted into the record—other decisions of the Board of Appeals in which it had decided the school capacity issue on appeals from PACE's denial of waivers from those requirements.

Relying on our decision in *Erb v. Maryland Department of the Environment*, 110 Md.App. 246, 676 A.2d 1017 (1996), the trial court admitted the Board of Appeals' other decisions in which it reached the school capacity issue on appeals from waiver denials, as evidence of "procedural irregularities." Without citing any additional authority, the trial court also admitted the APF Agreement, stating in its memorandum decision:

> In the same vein, the 1998 APF Agreement and the Record Extract from Nes I,[4] submitted by [Appellees] as supplemental evidence, may properly be considered in the case at bar as further evidence of the procedural irregularity surrounding this case. Additionally, the court is not persuaded by the County's argument that the Nes I ruling renders the APF Agreement void and therefore not subject for consideration in this appeal. Rather, the court finds that the APF Agreement has expired and thus the Secrecy Clause no longer precludes the court from considering it.
>
> PACE's original denial of [Appellees'] request for a waiver was clearly based on the fact that PACE found the schools to be inadequate *in addition* to the fact that it found the waiver requirements not to have been met. As such, [Appellees'] appeal of PACE's determination encompassed both of these issues. Mr. Blumenthal, the attorney for [Appellees] at that time, filed a Notice of Appeal in which he requested review of "the decision of the Director of the Department of Planning and Code Enforcement" which squarely put both of the aforementioned issues on the table for resolution by the Board.

---

4. "Nes I" was the proceeding involving the related declaratory judgment action.

At the hearing, Mr. Blumenthal repeatedly attempted to litigate the issue of school adequacy, despite the County's insistence that the issue was not properly before the Board. While the Board allowed Mr. Blumenthal to litigate the issue and accepted evidence of adequacy, it ultimately refused to determine the issue, claiming that the waiver request was the only matter ripe for determination. This action by the Board was improper and contrary to the very purpose of the hearing process; accepting evidence on adequacy but then refusing to make a decision on it likely generated confusion for [Appellees] on whether to present further legal argument on the adequacy of the waiver issue. In addition, it makes little sense for the Board to resolve the waiver issue independent from the school adequacy issue, as the resolution of each necessarily requires consideration of the other. Moreover, the Board has shown in a number of similar cases that school adequacy has been resolved in conjunction with the waiver issue. Therefore, the Board has singled out the Nes case for dissimilar treatment. Their decision was arbitrary and capricious and not in conformity with a common sense approach or with their own practice in such matters.

Thus, this court remands the case to the Anne Arundel County Board of Appeals to hear [Appellees'] appeal of PACE's determination regarding school adequacy, taking into consideration the existence and content of the APF Agreement, so that the waiver denial can be reviewed upon a complete record. In doing so, the Board should make a factual determination as to whether final sketch plan approval has been obtained by [Appellees], as this was a source of controversy during oral argument before this court. Accordingly, the court denies [Appellant's] Motion to Dismiss.

Thus, the circuit court concluded that PACE's denial of appellees' waiver request was "clearly based on the fact that PACE found the schools to be inadequate *in addition* to the fact that it found the waiver requirements not to have been met." "As such," the court continued, "Petitioners' appeal of

PACE's determination encompassed both of these issues." Further, the court found that, in light of the cases in which the Board determined school adequacy in appeals from waiver denials, its refusal to accord appellees' appeal the same treatment was arbitrary and capricious.

## LEGAL ANALYSIS

### I

■ Along with their brief, appellees filed a motion to dismiss appellant's appeal. Appellees argue that we lack jurisdiction over this appeal because no statute or ordinance expressly provides for an appeal to this Court from an adverse decision of Anne Arundel County's Board of Appeals.

Under Md. Code (2002 Repl. Vol.), Cts. & Jud. Proc. (C.J.), § 12–301, a party aggrieved by a circuit court's judgment may note an appeal, except as provided in C.J. § 12–302. Under the latter statute, "Unless a right to appeal is expressly granted by law, § 12–301 does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body." Thus, unless some statute or ordinance provides for an appeal to this Court, we have no jurisdiction. *See generally Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 693 A.2d 757 (1997).

Section 604 of the Anne Arundel County Charter provides:

Appeals from decisions of the Board.

Within thirty days after any decision by the County Board of Appeals is rendered, any person aggrieved by the decision of the Board and a party to the proceedings before it may appeal such decision to the Circuit Court of Anne Arundel County, which shall have power to affirm the decision of the Board, or if such decision is not in accordance with the law, to modify or reverse such decision, with or without remanding the case for rehearing, as justice may require. Whenever such appeal is taken, a copy of the

notice of appeal shall be served on the Board by the Clerk of said Court and the Board shall promptly give notice of the appeal to all parties to the proceeding before it. The Board shall, within fifteen days after the filing of the appeal, file with the Court the originals, or certified copies of all papers and evidence presented to the Board in the proceeding before it, together with a statement of facts found and the grounds for its decision. Within thirty days after the decision of the Circuit Court is rendered any party to the proceeding who is aggrieved thereby may appeal such decision to the Court of Appeals of the State. The review proceedings provided by this section shall be exclusive.

Thus, the Charter expressly authorizes that an appeal from the Board of Appeals [5] may be taken to the "Court of Ap-

---

**5.** In *Howard County v. Mangione,* 47 Md.App. 350, 423 A.2d 263 (1980), we noted the procedure followed by Howard County, a charter county, in promulgating the manner in perfecting an appeal from the Board of Appeals to the Court of Special Appeals:

On November 5, 1968, pursuant to Article XI–A of the Maryland Constitution, the voters of Howard County, Maryland adopted a charter form of government, which, among other things, provided for a County Board of Appeals to hear and decide all appeals relating to zoning, with the exception of zoning map amendments.

\* \* \*

Pursuant to the provisions of the enabling legislation, the Howard County Charter in Section 501(d) provides for the means of appeal as follows:

Within thirty days after any decision of the Board of Appeals is entered, any person, officer, department, board or bureau of the County, jointly or severally aggrieved by any such decision, may appeal to the Circuit Court for Howard County, in accordance with the Maryland Rules of Procedure. The Board of Appeals shall be a party to all appeals and shall be represented at any such hearing by the Office of the County Solicitor.

Section 121D of the Howard County Zoning Regulations (1977) provides that an appeal may be taken from the determination of the circuit court to the Court of Special Appeals.

In a footnote, we discussed the authority by which the Howard County Council was authorized to create its Board of Appeals and the mechanism by which decisions of the Board could be reviewed by the Court of Special Appeals:

The creation and jurisdiction of the Howard County Board of Appeals was specifically authorized and delineated in the Express Powers Act,

peals," but does not expressly provide for an appeal to this Court pursuant to the enabling authority of Article 25A, § 5U.[6] We shall deny appellees' motion.

> Article 25A, Section 5(U) of the Maryland Annotated Code (1957, 1973 Repl. Vol., 1980 Cum. Supp.), which states, in part, as follows: Section 5. The following enumerated powers are hereby granted to and conferred upon any county or counties which shall hereafter form a charter under the provisions of said Article 11A of the Constitution, that is to say:
>
> * * *
>
> It is not disputed that Anne Arundel County has not seen fit to adopt the procedure enacted by Howard County and most other charter counties in the State.

6. Article 25A, § 5U provides:

> To enact local laws providing (1) for the establishment of a county board of appeals whose members shall be appointed by the county council; (2) for the number, qualifications, terms, and compensation of the members; (3) for the adoption by the board of rules of practice governing its proceedings; and (4) for the decision by the board on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or exception or amendment of a zoning ordinance map; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order; and the assessment of any special benefit tax: Provided, that upon any decision by a county board of appeals it shall file an opinion which shall include a statement of the facts found and the grounds for its decision. Any person aggrieved by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision, with our without remanding the case for rehearing as justice may require. *Any party to the proceeding in the circuit court aggrieved by the decision of the court may appeal from the decision to the Court of Special Appeals in the same manner as provided for in civil cases.*
>
> As appellees explain in their motion, this anachronism has its origin in Md. Code (2001 Repl. Vol., 2004 Supp.), Article 25A § 5(U). Before the creation of the Court of Special Appeals, that statute provided that, in charter counties that created a Board of Appeals, such as Anne Arundel County, parties aggrieved by a decision of the Board of Appeals could note an appeal to the circuit court, and then to the "Court of Appeals." Anne Arundel County created a Board of Appeals and

We were faced with a similar motion to dismiss in *Department of General Services v. Harmans Associates Limited Partnership*, 98 Md.App. 535, 633 A.2d 939 (1993). In that case, the General Assembly had—inadvertently, we held—removed statutory authority for appellate review during the course of revising and recodifying Code provisions governing the Department of General Services. Judge Wilner, for the Court, observed:

> There are two reasons why we reject the motion (to dismiss). The first is that, in construing statutes, the predominant goal is to ascertain and carry out the legislative intent, and that, although the words actually used in the statute are normally the best indicator of that intent, sometimes they are not. The "plain meaning" rule is not rigid and may, as circumstances require, have to yield to other "external manifestations" or "persuasive evidence" of a contrary legislative intent. *See Kaczorowski v. City of Baltimore*, 309 Md. 505, 514–15, 525 A.2d 628 (1987); *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 597 A.2d 939 (1991).
>
> * * *
>
> Here, in particular, there is absolutely *no evidence that,* in a pure Code Revision bill, *the Legislature intended to abrogate the right of appeal to this Court.*

*Id.* at 545, 633 A.2d 939 (emphasis added).

Despite the fact that no statute expressly provided for an appeal in *Harmans,* we held that the legislative intent was to permit such an appeal.

Here, in support of their motion to dismiss, appellees rely on the language of the County Charter which designates the Court of Appeals as the forum to seek a direct appeal of a decision of the Board of Appeals, but the charter fails to

---

provided for an appeal, ultimately, to the Court of Appeals under that statute. After the Court of Special Appeals was created, § 5(U) was amended, providing for an appeal to this Court, rather than to the Court of Appeals. Anne Arundel County has neglected to amend its Charter subsequent to the creation of this Court and the change in § 5(U).

expressly provide for an appeal to this Court. While we recognize that *Harmans* addressed what Judge Wilner characterized as a "glitch in this seemingly clear and express authority for [the Department of General Services] to pursue this appeal" arising from an evident Code Revision error, the rationale employed was essentially that the legislative intent could not have been to deny the appellant its right of appeal.

We believe that such a legislative intent to afford an aggrieved party a right to a direct appeal to the Court of Special Appeals from a decision of the Board of Appeals, absent authorization in the County Charter, in this case, is evident. First, the circumstances of the enactment of particular legislation may have probative force in divining the intent, notwithstanding the literal and plain meaning of the words used. *Kaczorowski*, 309 Md. at 514, 525 A.2d 628. Regarding those circumstances, undoubtedly, the right to a direct appeal to this Court, rather than the Court of Appeals, would have been provided had this Court been in existence at the time of the promulgation of the right of appeal.

Moreover, the fact that the Court of Special Appeals is expressly designated in Article 25A, § 5U as the Court to which a party "aggrieved by the decision of the Circuit Court" may appeal supports the presumption of legislative intent that charter counties would invoke their authority to provide for such an appeal. Furthermore, Maryland law provides for the types of cases in which a party aggrieved by a decision of the Circuit Court may seek direct review by the Court of Appeals.[7] In the absence of statutory authority for such direct

---

7. Maryland Rule 8–301 provides for (1) direct appeal or application for leave to appeal, where allowed by law; (2) appeal pursuant to the Maryland Uniform Certification of Questions of Law Act; or (3) by writ of certiorari in all other cases. Subsection (b) provides for a direct appeal in a case in which a sentence of death was imposed and where other rules applicable to appeals, or "by the law authorizing the direct appeal." In addition to death penalty cases, direct appeals to the Court of Appeals are authorized, *inter alia*, in attorney grievance cases and cases involving sanctioning and removal of judges. *See* Md. Rules 16–759 (attorneys) and 16–809 (judges). Direct appeals may also be taken in legislative redistricting cases. Md. Const. Art. 3, § 5.

appeals and instances where the Court of Appeals exercises its right to bypass appellate review in the Court of Special Appeals, all other direct appeals must be filed in this Court. Consequently, under the premise advanced by appellees, a party aggrieved by a decision of the Board of Appeals in Anne Arundel County, unlike aggrieved parties in other charter counties in the State, may only obtain "one bite of the apple" in the Court of Appeals and be forced to forego appellate review by way of a petition for certiorari after review by this Court. In other words, aggrieved parties in Anne Arundel County are to be treated differently, under appellee's theory, simply because of a failure to act by the Anne Arundel County Council.

We are constrained, in seeking to ascertain legislative intent, to adopt that construction which avoids illogical or unreasonable result, or one which is inconsistent with common sense. *Kaczorowski*, 309 Md. at 513, 525 A.2d 628. We believe the position advanced by appellees to be untenable and in clear contravention of the legislative intent as evidenced by its designation, in Article 25A, § 5U, of the Court of Special Appeals as the proper forum for a direct appeal by a party aggrieved by a decision of the circuit court. Finally, we presume an intent on the part of the drafters of the County Charter to afford parties, aggrieved by decisions of the Howard County Circuit Court, the same rights of appeal as those enjoyed by aggrieved parties in all other charter counties in the State. We therefore deny appellee's motion to dismiss.

## II

The hearing before the Board of Appeals was a "hearing *de novo* upon the issues before" the Board. Anne Arundel County Charter § 603. This case turns on the meaning of that provision. In another case involving an appeal from the Anne Arundel County Board of Appeals, the Court of Appeals stated, "[W]e have consistently treated *de novo* appeals as wholly original proceedings, with the word 'appeal' meaning simply that the proceedings are new and independent rather than strict review of prior proceedings." *Halle Cos. v. Crofton*

*Civic Ass'n,* 339 Md. 131, 142, 661 A.2d 682 (1995). In the next sentence in that opinion, the Court tempered its unqualified declaration, stating, "Although *the issues to be addressed on review by the Board may be limited,* new and additional evidence is permitted. The proceedings, therefore, are wholly original with regard to all issues properly raised." *Id.* (emphasis added).

The Court continued:

In *UPS v. People's Counsel,* 336 Md. 569, 650 A.2d 226 (1994), we interpreted the power granted by the Express Powers Act as providing charter counties the option to vest the board of appeals with either original jurisdiction or appellate jurisdiction over any subject matter set forth therein. *UPS,* 336 Md. at 588, 650 A.2d at 236. We concluded that it was the intent of the General Assembly that "[u]nder the Express Powers Act, a board of appeals is primarily an appellate tribunal, having only such original jurisdiction as a county's charter and ordinances expressly grant[.]" *Id.* at 591, 650 A.2d at 237.

The protestants also rely upon *People's Counsel v. Crown Development,* 328 Md. 303, 316, 614 A.2d 553, 559 (1992), where this Court held, *inter alia,* that on an appeal from the decision of administrative officials granting final approval of a development plan, the Baltimore County Board of Appeals was authorized under the Express Powers Act and local law to receive and consider evidence in addition to that contained in the record before the administrative officials. The *Crown Development* case, like the *Hope* [*v. Baltimore County,* 288 Md. 656, 421 A.2d 576 (1980)] case, was concerned only with the appellate jurisdiction of the Board of Appeals. Our holding with regard to additional or *de novo* evidence before the Board of Appeals does not support the view that the Board has original jurisdiction over all subjects delineated in § 5(U). The fact that an appellate tribunal may be authorized to receive additional evidence or hear a case *de novo* does not mean that it is exercising original jurisdiction. A *de novo* appeal is nevertheless an exercise of appellate jurisdiction rather than original juris-

diction. *See Hardy v. State,* 279 Md. 489, 492, 369 A.2d 1043, 1046 (1977). Whether a tribunal's exercise of jurisdiction is appellate or original does not depend on whether the tribunal is authorized to receive additional evidence. Instead, as Chief Justice Marshall explained, '[i]t is the essential criterion of appellate jurisdiction that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. . . .' *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 175, 2 L.Ed. 60, 73 (1803).

*Id.* at 589–90, 650 A.2d at 236. That decision, however, does not conflict with our prior interpretation of *de novo* proceedings. The Anne Arundel County Board of Appeals may not entertain a truly original petition for variance or special exception, *but it may review the actions of the administrative hearing officer and take any action which that officer could have taken in the original proceeding.*

*Halle,* 339 Md. at 142–43, 661 A.2d 682 (emphasis added).

The issue in *Halle Companies* was whether the Board of Appeals had exceeded its appellate authority in imposing a condition on its granting of a special exception, when the appellant had not specifically sought that condition before the lower-level hearing officer. The special exception was to operate landfills, and the hearing officer denied the exception primarily based on traffic and environmental effects likely to be generated by use of the proposed access road. Before the Board of Appeals, the landowner sought to use a different access road, and the special exception was granted on condition that the alternative route were used.

The Court observed, *"The Anne Arundel County Board of Appeals may not entertain a truly original petition* for variance or special exception, but it may review the actions of the administrative hearing officer and take any action which that officer could have taken in the original proceeding." *Id.* at 143, 661 A.2d 682 (emphasis added). The Court went on to describe the nature of the Board's *de novo* appellate review:

It is appellate review mainly in the sense that *a decision by the administrative hearing officer is a prerequisite to*

***proceedings before the Board*** and not in the sense that the Board is restricted to the record made before the administrative hearing officer.

*Id.* (emphasis added).

On the merits of the issue, the Court concluded that, although the alternative access road was not addressed before the hearing officer, the issue of access generally was discussed. Therefore, because "[t]he access issue was so inextricably intertwined with the administrative hearing officer's decision," it "was an issue properly before the Board which could be addressed." *Id.* at 145–46, 661 A.2d 682; *see also Daihl v. County Bd. of Appeals of Balt. County,* 258 Md. 157, 162–64, 265 A.2d 227 (1970); *Bd. of County Comm'rs for St. Mary's County v. S. Res. Mgmt.,* 154 Md.App. 10, 29–30, 837 A.2d 1059 (2003).

■ Here, appellees assert that it was proper for the Board of Appeals to consider the issue of whether the schools were adequate because PACE decided that the schools' capacity was inadequate. PACE's decision, however, did not determine that issue, as it was not raised in the "proceeding" before PACE from which appellees' appeal was taken. Rather, before PACE, appellees themselves affirmatively asserted that the schools were inadequate; the only issue decided by PACE was whether a waiver should be granted under Article 26 § 2–411, not whether schools were adequate, under Article 26 § 2–416. To allow a decision on school adequacy by the Board, under these circumstances, would be to permit a "truly original petition" to go before that body, when, by the County's Charter, it only has appellate jurisdiction. *Cf. People's Counsel for Balt. County,* 336 Md. at 587–91, 650 A.2d 226.

Appellees seem to be arguing that PACE concluded, in the course of the parties' APF agreement negotiations, that schools would be inadequate to service the proposed development. Accordingly, PACE suggested that appellees apply for a waiver. PACE's informal suggestion, in the course of negotiations, however, was not an appealable decision. *Cf. id.,* 336 Md. at 581–85, 650 A.2d 226. If appellees wished to

contest PACE's position on school adequacy, they could have argued, formally, both that a waiver was unnecessary, and that, if one were necessary, it should be granted. Having only advanced the latter argument, and having abandoned—and continuing to abandon in this Court—the former, appellees failed to properly place the issue of school capacity before PACE and the Board of Appeals.[8]

## III

 The decision under review, of course, is that of the Board of Appeals. *See, e.g., Hikmat v. Howard County*, 148 Md.App. 502, 513 n. 4, 813 A.2d 306 (2002). Before the Board of Appeals, appellees expressly abandoned their position that a waiver should be granted. *See supra* pp. 520–21 ("I'm not asking you ... to grant the waiver."). Appellees argued in the circuit court, and in this Court, that the Board's conclusion that it had not made out a case for waiver was unsupported by substantial evidence. However, by virtue of their abandonment of that issue before the Board, we conclude that appellees waived any claim that the Board erred in failing to grant the waiver.

## IV

Because the circuit court concluded that the Board could entertain the issue of school capacity, despite the fact that

---

8. Our conclusion obviates the need to address the issues of whether the circuit court erred in admitting the allegedly inconsistent Board decisions, in which they addressed school capacity in waiver denial cases, and whether those decisions demonstrate that the Board acted in an arbitrary and capricious manner in this case. However, we observe that only the Board's opinions in those cases, and not the PACE waiver applications, were submitted, and those did not involve such a large, complex subdivision as is the case here; thus, we see no basis for finding them to be "comparable decisions," as would be required to find them relevant to the issues at hand. *See Boehm v. Anne Arundel County*, 54 Md.App. 497, 500–03, 459 A.2d 590 (1983). Moreover, the mere fact that an administrative body sometimes erroneously exercises authority not within its purview does not support the argument that the agency is acting in an arbitrary and capricious manner when it declines to so err.

appellees failed to raise that issue before PACE, we must reverse the court's judgment. In effect, therefore, we affirm the Board's conclusion that it had no authority to reach the issue which was not properly before it.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED.**

**COSTS TO BE PAID BY APPELLEES.**